# IN THE SUPERIOR COURT THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

ELLEN STEWART, PERRY COWAN,　　　　)
DELIA THOMAS, HILARY ACTIVILLE,　　)
ANTHONY ROMANO, ANDREA KING,　　　)
DONALD (Skip) KING, CAROLYN TYSON,　)
MR. & MRS. PETROSKY, and　　　　　　)
A. JEFFERY WEISS,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
VIRGIN ISLANDS BOARD OF LAND USE　)
APPEALS; Jean-Pierre L. Oriol,[1]　　　　)
COMMISSIONER VIRGIN ISLANDS　　　)
DEPARTMENT OF PLANNING AND　　　)
NATURAL RESOURCES; and the VIRGIN )
ISLANDS DEPARTMENT OF PLANNING　)
AND NATURAL RESOURCES,　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Defendants,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
And　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
ST. MARK COPTIC ORTHODOX CHURCH, )
　　　　　　　　　　　　　　　　　　　)
　　　　Defendant-in-Intervention. )

CASE NO. ST-2009-CV-00438

ACTION FOR DECLARATORY
and INJUNCTIVE RELIEF

**2025 VI Super 44U[2]**

---

[1] Pursuant to Rule 25(d) of the Virgin Islands Rule of Civil Procedure, V.I.R. CIV. P. 25(d) ("The officer's successor is automatically substituted as a party."), the caption has been amended to reflect the appointment of a new person to the office of the Commissioner of the Virgin Islands Department of Planning and Natural Resources. *See generally* 3 V.I.C. § 400(a)-(b) ("There is established as an executive department in the Government of the Virgin Islands the Department of Planning and Natural Resources . . . . At the head of the Department there shall be a Commissioner of Planning and Natural Resources (hereinafter, referred to as the 'Commissioner'). . . . The Department shall be administered under the supervision and direction of the Commissioner.").

[2] Considering the unique procedural posture that has led to the issuance of this opinion, the Court believes it is better to leave this opinion unpublished. The motions practice that presented many of the issues addressed today were filed and "Fairly Presented" in a different, related, V.I. SUPER. CT. 17.1 (related proceedings must be before the same judge), proceeding. While the Court believes that it is within its authority to conduct a facial sufficiency analysis similar to the one conducted in *Skepple v. Bank of N.S.*, 69 V.I. 700, 731 (V.I. 2018) ("[A] party challenging whether a plaintiff has complied with the applicable requirements for service must submit an affidavit or other competent evidence showing that service in compliance with the applicable rule was never achieved, **unless the facts in the record demonstrate a failure to make a *prima facie* showing that service** was accomplished." (emphasis added)

2025 VI Super 44U

A. JEFFERY WEISS, ESQ.
A.J. WEISS & ASSOCIATES.
St. Thomas, VI
*Counsel for Plaintiffs, Ellen Stewart, Perry Cowan, Delia Thomas, Hilary Activille, Anthony Romano, Andrea King, Donald (Skip) King, Carolyn Tyson, Mr. & Mrs. Petrosky, and A. Jeffery Weiss,*

SHEENA CONWAY, ESQ.
VIRGIN ISLANDS DEPARTMENT OF JUSTICE
St. Thomas, VI
*Counsel for Jean P. Oriol, Commissioner Virgin Islands Department of Planning and Natural Resources and Virgin Islands Department of Planning and Natural Resources*

SHAWN E. MAYNARD-HAHNFELD, ESQ.
LAW OFFICES OF DESMOND L. MAYNARD
St. Thomas, VI
*Counsel for Defendant-in-Intervention St. Mark's Coptic Orthodox Church, Inc.*

---

(citing *Molloy v. Independence Blue Cross*, 56 V.I. 155, 172 (V.I. 2012); *Settlemier v. Sullivan*, 97 U.S. 444, 447 (1878); *Thomas v. Bonanno*, Civil No. 2013-06, 2013 WL 3958772, at *3 (D.V.I. July 30, 2013) (unpublished))), the fact that this Court has been unable to locate any binding precedent addressing such a situation counsels against binding the Court through principles of *stare decisis*.

**2025 VI Super 44U**

## <u>MEMORANDUM OPINION AND ORDER</u>

¶1     **THIS MATTER** is before the Court upon the following:

1.  The February 26, 2025[3] "Plaintiffs' Motion to Strike and Revoke Leave to Intervene," (referred to as "Motion to Strike"), supported by:

    -   Plaintiffs' "Memorandum of Law[4] in Support of Plaintiffs' Motion to Strike and Revoke Leave to Intervene;"

---

[3] For Parties' filings approved by the Clerk of the Court, the operative date for purposes of complying with filing deadlines is the date a document is submitted electronically. V.I. E-FILING R. 5(d) ("If the clerk accepts the document, the document shall be considered filed with the court on the date the original submission to the electronic filing system was complete."); *see also* V.I. E-FILING R. 5(c).

[4] Whatever may have been the prior practice, when the present motion was filed, the Local Rules of the District Court of the Virgin Islands were no longer applicable to this proceeding. V.I. R. CIV. P. 1-1(c). Instead, Virgin Islands Rules of Civil Procedure 1, 7(b), and 6-1 applied to this motion. V.I.R. CIV. P. 7(b) ("A request for a court order must be made by motion complying with Rule 6-1 ....").

The separate filing of a memorandum of law is a blatant violation of Virgin Islands Rule of Civil Procedure 6-1(a)(1). As the Virgin Islands Supreme Court has explained, "[u]nder modern Virgin Islands practice, each motion, response and reply document includes the argument and authorities in support of the party's position—no separate 'brief' document is required." V.I. R. CIV. P. 6-1, cmt.; *see also* V.I. R. CIV. P. 6-1(a)(1) (explicitly dictating that a motion must "be in writing" and requiring that the motion contain the grounds for relief with citation to authorities and state the relief sought); 6-1(d) (requiring that supporting factual documents such as affidavits be attached). Rule 1 demands that the rules "be construed, administered, and employed by the court and the parties to secure just, speedy, and inexpensive determination of every action ...." V.I. R. CIV. P. 1; *see World Fresh Markets, LLC v. Henry*, 71 V.I. 1161, 1180 n.14 (V.I. 2019). The filing of a "motion" as a document separate from a "memorandum in support" plainly violates Rule 1 and is contrary to the plain text of Rule 6-1.

Rule 6-1(a) requires that a motion be in writing and contain appropriate citations to supporting legal authority. V.I. R. CIV. P. 6-1(a)(1)-(2). For parties to unnecessarily bifurcate a request for relief into more than one document is wholly inconsistent with the mandates of Rule 1, which the bar and the judiciary must diligently and conscientiously apply. *Henry v. Dennery* ("*Dennery II*"), No. S.CT.CIV. 2012-0130, 2013 WL 206128, at *2 (V.I. Jan. 11, 2013) (*per curiam*) (unpublished) (There "is simply no excuse for a single judge setting aside a mandatory court rule that was validly adopted by the Superior Court pursuant to its rulemaking authority."); *e.g., World Fresh Markets*, 71 V.I. at 1180 n.14; *Evans-Freke v. Evans-Freke*, 75 V.I. 407, 431 (V.I. 2021) (Swan, J., concurring) (citing, *inter alia, Hatchette v. West Indian Co.*, 17 V.I. 549 (D.V.I. 1980)). This rule's function is enabling more effective docket management and timely disposition of motions and, ultimately, cases. Hundreds of cases are filed in this Court every year. Within those cases, tens of motions are filed every year. And! Assuming that "standard" motions practice is all that occurs, each motion has only an opposition and reply—notably, most counsel engage in anything but "standard" motions practice; and the number of filings is significantly more than would be expected based on the plain text of Virgin Island Rule of Civil Procedure 6-1(c). This is an overwhelming amount of information to process and ultimately understand, apply, and decide. Dismantling coherent arguments to balkanize them into separate entries on the Court's docket does nothing but create logistical barriers to accessing and digesting the filings, which takes more time and energy. By violating Rule 6-1, parties delay resolution of their own matters and interfere with the Court's management of its case load. Virgin Islands Rule of Civil Procedure 6-1's policies implicate concerns beyond that of the parties. As such, the Court would be justified in striking filings in violation of this rule and, at a minimum, ordering counsel to refile a compliant motion, as neither parties to litigation nor this Court is entitled to disregard the Court's rules—parties cannot disregard courts rules simply because they see it as convenient. *See, e.g., Dennery II*, 2013 WL

- o Exhibit 1—"Findings of Fact and Conclusions of Law" in Super. Ct. No. ST-2019-CV-00719, entered August 27, 2020;

- o Exhibit 2—Final Judgement in Super. Ct. No. ST-2019-CV-00719, entered August 27, 2020;

- o Exhibit 3—Warranty Deeds to the parcels of land that were consolidated to create the location of the church structure at issue and subject to the claim to quiet title in Super. Ct. No. ST-2019-CV-00719;

- o Exhibit 4—Coastal Zone Management application for the CZM permit to construct the church in question;

- o Exhibit 5—Major Coastal Zone Permit CZT-10-06L;

- o Exhibit 6—Building Permit No. 310-08;

- o Exhibit 7—Change Order to DCM Corporation relating to the construction under the CZM permit;

- o Exhibit 8—Letter dated March 3, 2018, from Father Boulos to Father Connor;

- o Exhibit 9—Letters dated October 4, 2018, to Rev. Fr. Cyril;

- o Exhibit 10—"Corrective Deed" sued over in Super. Ct. No. ST-2019-CV-00719;

- o Exhibit 11—Complaint in Super. Ct. No. ST-2019-CV-00719 (including attached exhibits);

- o Exhibit 12—Entry of Default in Super. Ct. No. ST-2019-CV-00719;

- o Exhibit 13—Record of Proceedings, dated April 10, 2020, in Super. Ct. No. ST-2019-CV-00719;

- o Exhibit 14—Exhibit List, dated August 10, 2020, in Super. Ct. No. ST-2019-CV-00719; and

---

206128, at *2 ("Likewise, even if [the parties] both requested a trial *de novo*, this Court has repeatedly instructed that parties cannot simply stipulate to the law." (citing *Rohn v. People,* S. Ct. Crim. No.2011–0087, 2012 WL 5901924, at *2 (V.I. Nov. 21, 2012) (unpublished); *Matthew v. Herman,* 56 V.I. 674, 682 (V.I. 2012))). Parties and counsel are admonished to ensure their future motions practice comply with this rule.

**2025 VI Super 44U**

- Plaintiffs' February 26, 2025 "Notice of Filing Inadvertently omitted Exhibit 18 to Memorandum of Law in Support of Plaintiffs' Motion to Strike and Revoke Leave to Intervene[5]" and

  o Exhibit 18—Order and Decree of the Clerical Council of the Coptic Orthodox Church Archdiocese of North America, dated August 26, 2022.

2. Defendant-in-Intervention, "St. Mark Coptic Orthodox Church, Inc.'s Response in Opposition to Plaintiffs' Motion to Strike and Revoke Leave to Intervene," (the "Opposition to Motion to Strike") filed April 1, 2026. This was supported[6] by:

- Exhibit 1—Order of Reassignment, dated December 19, 2024;

- Exhibit 2—September 23, 2014 Order;

- Exhibit 3—May 22, 2017 Mandate of the Virgin Islands Supreme Court returning this matter to this Court after appeal;

- Exhibit4—January 21, 2025 Order;

- Exhibit 5—Affidavit of Father Connor in ST-2019-CV-00719, dated September 16, 2020;

- Exhibit 6— Affidavit of Father Connor in ST-2019-CV-00719, dated November 5, 2020;

- Exhibit 7—Articles of Incorporation of St. Mark Coptic Orthodox Church, Inc.;

- Exhibit 8—Transcript of August 10, 2020 hearing in ST-2019-CV-00719;

- Exhibit 9—Warranty Deed to one of the parcels of land that were consolidated to create the location of the church structure at issue and subject to the claim to quiet title in Super. Ct. No. ST-2019-CV-00719;

- Exhibit 10—Warranty Deed to one of the parcels of land that were consolidated to create the location of the church structure at issue and subject to the claim to quiet title in Super. Ct. No. ST-2019-CV-00719;

- Exhibit 11—Corrective Deed at issue in Super. Ct. No. ST-2019-CV-00719;

---

[5] States that "there are no Exhibits 15, 16 & 17" filed therewith.

[6] The exhibits had been filed in Defendant-in-Intervention's March 4, 2025 opposition to disqualify counsel for Defendant-in-Intervention and were incorporated to the present motions practice by reference.

**2025 VI Super 44U**

- Exhibit 12—"Findings of Fact and Conclusions of Law" in Super. Ct. No. ST-2019-CV-00719, entered August 27, 2020;

- Exhibit 13—Manager's Check 000500;

- Exhibit 14—Manager's Check 000499;

- Exhibit 15—Owner's Policy;

- Exhibit 16—Record of Proceedings in Super. Ct. No. ST-2019-CV-00719, dated February 24, 2021;

- Exhibit 17—February 25, 2021 Order in Super. Ct. No. ST-2019-CV-00719;

- Exhibit 18—March 23, 2021 Order in Super. Ct. No. ST-2019-CV-00719;

- Exhibit 19—Record of Proceedings in Super. Ct. No. ST-2019-CV-00719, dated March 23, 2021;

- Exhibit 20—Plaintiffs' Brief in Super. Ct. No. ST-2019-CV-00719;

- Exhibit 21—Defendant's Opposition in Super. Ct. No. ST-2019-CV-00719; and

- Exhibit 22—April 26, 2017 Opinion of the Virgin Islands Supreme Court determining the appeal of this matter.

3. Plaintiffs' "Reply to St. Mark Coptic Orthodox Church, Inc.'s Response in Opposition to Plaintiffs' Motion to Strike and Revoke Leave to Intervene," filed April 25, 2025, and supported by the following exhibits filed in this matter:

- Reply Exhibit 1—Defendant-in-Intervention's "Motion to Intervene as Defendant;"

- Reply Exhibit 2—Defendant-in-Intervention's "Statement of Undisputed Material Facts;"

- Reply Exhibit 3—Defendant-in-Intervention's "Memorandum of Law in Support of Motion for Summary Judgment;"

- Reply Exhibit 4—"Corporate Resolution to Correct Title on Real Estate" of St. Mark Coptic Orthodox Church, Inc.; and

- Reply Exhibit 5—Fax regarding purchase of parcels on which the church was constructed.

2025 VI Super 44U

4. "Plaintiffs' Motion to Disqualify Defendant-in-Intervention's Counsel," filed February 11, 2025, supported by:

- "Plaintiffs' Memorandum of Law in Support of Their Motion to Disqualify Defendant-in-Intervention's Counsel," filed February 11, 2025, with the following exhibits:

  o Exhibit 1—Defendant-in-Intervention's "Motion to Intervene as Defendant;"

  o Exhibit 2—November 15, 2010 Order in this matter;

  o Exhibit 3—Warranty Deeds to the parcels of land that were consolidated to create the location of the church structure at issue and subject to the claim to quiet title in Super. Ct. No. ST-2019-CV-00719;

  o Exhibit 4—Coastal Zone Management application for the CZM permit to construct the church in question;

  o Exhibit 5—Major Coastal Zone Permit CZT-10-06L;

  o Exhibit 6—Building Permit No. 310-08;

  o Exhibit 7—Change Order to DCM Corporation relating to the construction under the CZM permit;

  o Exhibit 8—Letter dated March 3, 2018, from Father Boulos to Father Connor;

  o Exhibit 9—Letters dated October 4, 2018, to Rev. Fr. Cyril;

  o Exhibit 10—"Corrective Deed" at issue in Super. Ct. No. ST-2019-CV-00719;

  o Exhibit 11—Complaint in Super. Ct. No. ST-2019-CV-00719 (including attached exhibits);

  o Exhibit 12—Entry of Default in Super. Ct. No. ST-2019-CV-00719;

  o Exhibit 13—Record of Proceedings, dated April 10, 2020, in Super. Ct. No. ST-2019-CV-00719;

  o Exhibit 14—Exhibit List, dated August 10, 2020, in Super. Ct. No. ST-2019-CV-00719;

  o Exhibit 15—"Findings of Fact and Conclusions of Law" in Super. Ct. No. ST-2019-CV-00719, entered August 27, 2020;

- o Exhibit 16—Final Judgement Super. Ct. No. ST-2019-CV-00719, entered August 27, 2020;

- o Exhibit 17—Order and Decree of the Clerical Council of the Coptic Orthodox Church Archdiocese of North America, dated August 26, 2022;

- o Exhibit 18—August 28, 2020 "Motion of St. Mark Coptic Orthodox Church, Inc for a Ruling on Its Motion for Summary Judgment Filed With the Court on December 20, 2010 To Dismiss Count II."

5. Defendant-in-Intervention's "St. Mark Coptic Orthodox Church, Inc.'s Response in Opposition to Plaintiffs' Motion to Disqualify Defendant-in-Intervention's Counsel" filed March 4, 2025.[7]

6. Plaintiffs' April 14, 2025 "Reply to Defendant-in-Intervention's Counsels' Response in Opposition to Plaintiffs' Motion to Disqualify," and supported by the following exhibits:

- Reply Exhibit 1—Documents relating to CZM application and the decision in BLUA App. No. 0003/2006;

- Reply Exhibit 2—BLUA appeal brief and appendix submitted by Attorney Maynard, dated September 8, 2006;

- Reply Exhibit 3—Environmental assessment of the proposed church construction that is the subject of this suit;

- Reply Exhibit 4—St. Mark's Motion to grant Major CZM permit Application No. CZT-10-06(L) and Response in Opposition to Government's Motion to Dismiss for Lack of Jurisdiction, filed February 21, 2007, in BLUA Appeal No. 2006-003;

- Reply Exhibit 5—Reply Brief of Appellant St. Mark Coptic Orthodox Church, filed March 12, 2007, in BLUA Appeal No. 2006-003;

- Reply Exhibit 6—Flood Plain Determination and Permit Application for the construction of the church structure that is the subject of this suit;

- Reply Exhibit 7—Fax regarding purchase of parcels on which the church was constructed:

---

[7] This was supported by the same exhibits relied upon in Defendant-in-Intervention, "St. Mark Coptic Orthodox Church, Inc.'s Response in Opposition to Plaintiff's motion to Strike and Revoke Leave to Intervene," filed April 1, 2025.

2025 VI Super 44U

- Reply Exhibit 8—Proof of Legal Interest submitted with CZM application; and

- Reply Exhibit 9—By-laws of "The Coptic Orthodox Churches in North America."

¶2    By order entered September 11, 2025, this Court scheduled oral arguments on the foregoing

for December 3, 2025. Oral arguments were held as scheduled, and all the Parties were represented

by counsel.

## BACKGROUND

¶3    The history of this matter is rather long and torturous. On April 26, 2017, the Virgin Islands

Supreme Court decided the appeal[8] in which it determined that all but Count II of the Complaint[9]

were barred by principles of *res judicata* and collateral estoppel due to that Court's decision in

*Thomas v. Virgin Islands BLUA*, 60 V.I. 579 (V.I. 2014).[10] This Case, No. ST-2009-CV-00438,

is presently before the Court following remand from the Virgin Islands Supreme Court. The

foregoing filings include matters from *Coptic Orthodox Archdiocese of North America v. Antonius*

*Cyril Connor and St. Mark Coptic Orthodox Church, Inc.,* Civ. No. ST-2019-CV-00719,[11] a

related case[12] pending before another Judge of this Court.

---

[8] *Stewart v. Virgin Islands BLUA*, 66 V.I. 522 (V.I. 2017).

[9] This action was commenced on September 22, 2009. *See generally* V.I.R. Civ. P. V.I.R. Civ. P. 3 (action commenced upon filing of complaint); V.I. E-FILING R. 5(d); *see also* V.I. E-FILING R. 5(c).

[10] *Stewart*, 66 V.I. at 526 ("Appellants argue that the Superior Court erred in applying res judicata and collateral estoppel to dismiss their case based on this Court's decision in *Thomas v. Virgin Islands BLUA*, 60 V.I. 579 (V.I. 2014). For the reasons that follow, we affirm the Superior Court's dismissal of the first count of appellants' complaint but reverse its dismissal of the second count of that complaint.").

[11] *Coptic Orthodox Archdiocese of North America v. Antonius Cyril Connor and St. Mark Coptic Orthodox Church, Inc.,* Civ. No. ST-2019-CV-00719, Compl. Dec. 12, 2019. For ease of reference, case ST-2019-CV-00719 will be referred to as the "Quiet Title Action." The defendants in that matter will be referred to as the "Quiet Title Defendants," and the Plaintiff in that action will be referred to as "Quiet Title Plaintiff." The Quiet Title Defendants include the Defendant-in-Intervention in this matter.

[12] V.I. SUPER. CT. R. 17.1.

**2025 VI Super 44U**

## I.     Case No. ST-2019-CV-00719:  Quiet Title Action

¶4     Following remand, on December 12, 2019, the "Coptic Orthodox Archdiocese of North America" commenced[13] the Quiet Title Action seeking a declaration of the ownership of the land upon which the construction that is the subject of this Case was to occur.  On January 24, 2020, the Quiet Title Plaintiff filed an affidavit of a process server as proof of legal notice[14] to the Quiet Title Defendants, Antonius Cyril Connor and St. Mark Coptic Orthodox Church, Inc. on January 23, 2020, on St. Thomas in the Home Depot.[15]  The process server declared under penalty of perjury that they were over 18 and a resident in the Territory and further declared that they were neither a party to this action nor "related to" any of the parties.  The summons and complaint in the Quiet Title Action were served upon Antonius Cyril Connor, who was at that time both a Quiet Title Defendant and the president of St. Mark Coptic Church, Inc.

¶5     On January 23, 2020, after Father Connor left the documents from the process server on the floor of the Home Depot, he went to the office of the Clerk of the Superior Court and obtained a copy of the complaint in the Quiet Title Action.[16]  On August 10, 2020, after the Quiet Title Defendants defaulted, a default judgment hearing was held.[17]  The hearing went forward,[18] and the Court entered a Final Judgment[19] on August 27, 2020, quieting title to the parcel—upon which the

---

[13] *See generally* V.I.R. CIV. P. 3; V.I. E-FILING R. 5(d); *see also* V.I. E-FILING R. 5(c).

[14] *See generally Skepple*, 69 V.I. at 715 n.5 (defining "Legal Notice" and analyzing Due Process notice requirements for commencing a case).

[15] January 24, 2020 "Notice of Filing," Exhibit A.

[16] Docket Entry, "Customer Assistance-Walk In," Jan. 23, 2020.

[17] August 5, 2020 Oder in the Quiet Title Action.

[18] August 10, 2020 Record of Proceeding in Quiet Title Action.

[19] The V.I. Supreme Court has explained what a "Final Judgment" is, *e g., Skepple*, 60 V.I. at 714 & n 5 ("A 'Final Order' ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. The entry of a Final Order implicitly denies all pending motions, and all prior interlocutory orders merge with the Final Order." (citing *Simpson v. Board of Dirs of Sapphire Bay Condo. W*, 62 V.I. 728, 731 (VI. 2015); *Ramirez v. People*, 56 V.I. 409,416 (VI. 2012) and citations in footnote)), *see generally Penn v. Mosley*, 67 V.I. 879, 891 n.4 (V.I. 2017)

construction that is the subject of this Case was to occur—in the Quiet Title Plaintiff, Coptic

Orthodox Archdiocese of North America.[20]

¶6      On September 17, 2020, the Quiet Title Defendants moved to vacate the Quiet Title

Judgment.[21]  While the Quiet Title Defendants provided many exhibits in support of this request,

they did not submit an affidavit of anyone, including Quiet Title Defendant Connor.[22]  The motion

itself included four (4) total pages, the last of which contained only the one-sentence certification

of counsel that the motion did not exceed the prescribed page limit.  The remaining three pages

contained the case caption, counsel's signature block, and the certificate of service.  In the

"Material Facts" section of this motion, the Quiet Title Defendants stated that "Plaintiff's failure

to serve Defendants with the Summons and Complaint in this action obviously unfairly denies and

robs Defendants of due process, as Defendants were not given the opportunity to defend this action

even though they have a valid and good defense."

¶7      Then, relying upon Virgin Islands Rule of Civil Procedure 60, the Quiet Title Defendants

argued that:

> St Mark Coptic Orthodox Church, Inc. is the purchaser of the two (2) parcels
> referred to in both deeds, therefore, even if the conveyance under the Corrective
> Deed was invalid, title should still remain in St Mark Coptic Orthodox Church, Inc.
> pursuant to Doc Nos 2002006950 or 2002006951.  Since acquiring the said pieces
> of property, St Mark Coptic Orthodox Church, Inc. has not conveyed those parcels

---

(discussing the distinctions between a judgment, order, and decree); *Miller v. Sorenson,* 67 V.I. 861, 871-72 (V.I. 2017) (same); *Gov't of the V.I. v. Crooke,* 54 V.I. 237, 249 52 (V.I. 2010) (adopting Collateral Order rule for establishing a Final Judgment); *e.g., Demming v. Demming,* 66 V.I 502, 506 (V.I. 2017) (holding that a divorce decree is a final judgment), *Cianci v. Chaput,* 68 V.I. 682,688 (V I. 2016) (quoting *Matter of Estate of George,* 59 V.I. 913, 919 (V.I. 2013)); *Williams v. People (Williams I),* 58 V.I. 341, 347-48 (V.I. 2013) (holding that a stay of execution of judgment does not render an order non-final).

[20] August 27, 2020 judgment and findings of fact and conclusions of law in the Quiet Title Action.

[21] Sept. 17, 2020 "Motion to Vacate Default Judgment" in the Quiet Title Action.

[22] *But see Skepple,* 69 V.I. at 731 (citing *Molloy,* 56 V.I. at 172; *Settlemier,* 97 U.S. at 447; *Bonanno,* 2013 WL 3958772, at *3).  Because the Quiet Title Plaintiff did not assert this waiver in its opposition to the motion to vacate the Quiet Title Judgment—the first available opportunity to assert wavier—they have waived that argument.

**2025 VI Super 44U**

in any form to any person, natural or artificial. Thus, it is factually inaccurate and a misrepresentation to this Court when Plaintiff alleges that there has been a conveyance of the subject properties. . . . Defendants, therefore, believe that, based on the foregoing there is good and valid reason for the Court to vacate the Default Judgment entered herein.

¶8     It was only when filing a reply that the Quiet Title Defendants submitted an affidavit providing facts contradicting the Quiet Title Plaintiff's proof of service of process in the Quiet Title Action. In their reply[23] in furtherance of their argument that the Quiet Title Judgment was void due to lack of personal jurisdiction over the Quiet Title Defendants (due to an argued failure of service of process), the Quiet Title Defendants stated that:

> On January 23, 2020, Father Connor was approached by Carty[, a former parishioner,] while Father Connor was shopping inside the Home Depot store on St Thomas. . . . While Carty was speaking to Father Connor in the store, Father Connor was approached from behind by Rhymer who said I'm looking for you and quickly dropped some documents on the floor of the aisle near a shopping cart while hurriedly departing the aisle and screaming behind him you've been served! . . . Father Connor admittedly left the Home Depot store and did not retrieve the documents Rhymer had dropped on the floor near a cart in Home Depot.

Quiet Title Defendant Connor stated in his reply-affidavit, the following:

> I photographed [the process server] with my cell phone as [they] hurriedly left the aisle and also photographed Carty who stood in the aisle taking pictures of me and the papers [the process server] had dropped on the floor near a shopping cart (See Exhibit A attached). . . . Almost immediately thereafter, I left the Home Depot store as I had completed my shopping and did not retrieve the documents which [the process server] had dropped in the aisle of the Home Depot store. [[24]]

---

[23] Nov. 5, 2020 "Defendants' Antonius (Sic) Cyril (Sic) Connor and St. Mark Coptic Orthodox Church, Inc.'s Reply to Plaintiff's Opposition to Defendant's Motion to Vacate Default Judgmetn," filed in the Quiet Title Action.

[24] Exhibit A to the Quiet Title Defendants' Nov. 5, 2020 reply to the Quiet Title Plaintiff's opposition to the motion to vacate the final judgment in the Quiet Title Acton.

**2025 VI Super 44U**

The photos provided by both sides of the Quiet Title Action reflect that the summons and complaint were delivered inside the Home Depot.[25] The photos of the Quiet Title Plaintiff show Father Connor plainly inside the Home Depot and the process server walking inside the Home Depot and the summons and complaint to the Quiet Title Action on the floor of the Home Depot.[26] Likewise, the photo of Carty (taken by Quiet Title Defendant Connor) plainly shows him inside the Home Depot.

¶9    The Court held an evidentiary hearing in the Quiet Title Action on February 18, 2021.[27] It was at this hearing that the Quiet Title Defendants raised for the first time the issue that two witnesses at the default judgment hearing in the Quiet Title Action had not been subjected to the penalty of perjury[28] before testimony was taken. By order entered March 25, 2021, the parties to the Quiet Title Action were ordered to submit briefs addressing the impact of a failure to subject one or more witnesses to the penalty of perjury before taking testimony on a final judgment.[29] The Quiet Title Defendants filed their brief on May 17, 2021. The Quiet Title Plaintiff filed its opposition on June 25, 2021; and the reply was filed on July 9, 2021.

---

[25] In its presentation of facts in its opposition, counsel for the Quiet Title Plaintiff relied upon the original proof of service when it stated that service had taken place in the Home Depot parking lot. The original affidavit of the process server states that service occurred at "Home Depot." The second affidavit of the process server states service occurred "at the Home Depot" and that Quiet Title Defendant Connor threw the summons and complaint "to the floor of the store." Counsel's misstatement of facts cannot contradict the actual evidence presented. Unsworn statements of counsel are not evidence. *Henry v. Dennery* ("*Dennery I*"), 55 V.I. 986, 993-94 (V.I. 2011).

[26] The photos discussed above were submitted as Exhibit 5 to the Quiet Title Plaintiff's opposition to the motion to vacate the final judgment in the Quiet Title Action and authenticated by a second affidavit of the process server. (Exhibit 4 to that opposition).

[27] Feb. 24, 2021, Record of Proceeding in the Quiet Title Action; January 14, 2021 Order, ("[T]he hearing scheduled for January 19 2021 is rescheduled for Thursday, Februam 18, 2021 at 10 00 a m by ZOOM.").

[28] Generally, where a traditional oath or affirmation would be required, the Virgin Islands has permitted a person to declare as follows, "I declare under penalty of perjury under the laws of the Virgin Islands that the foregoing is true and correct." V.I. SUPER. CT. R. 18(1). If that declaration is signed and dated, it is effective to subject a person to all the penalties of breaking the oath given before testifying.

[29] March 25, 2021 Order in the Quiet Title Action.

2025 VI Super 44U

¶10    On December 18, 2025, the Quiet Title Defendants filed "Defendants' Antonious (sic) Cyril (sic) Connor and St. Mark Coptic Orthodox Church, Inc.'s Motion to Resume Evidentiary hearing and for Ruling on Motions to Vacate Default Judgment" in which they seek to continue the February 18, 2021 evidentiary hearing held on the Quiet Title Defendant's motion to vacate the Quiet Title Judgment.

## II.    Case No. ST-2009-CV-00438: Procedural History Since the Final Judgment in the Quiet Title Action

¶11    On February 26, 2025, "Plaintiff's Motion to Strike and Revoke Leave to Intervene" was filed in this Case. Relying upon that Quiet Title Judgment, Plaintiffs argued that principles of *res judicata* and collateral estoppel established that this Court's prior order granting leave for St. Mark Coptic Orthodox Church, Inc. to intervene was founded upon erroneous factual findings, *i.e.*, that the property upon which the disputed construction was to occur was owned by Defendant-in-Intervention.[30] Absent that factual reality, Defendant-in-Intervention has no interest in this Case to either defend or advocate, making the determination that intervention was appropriate error.

¶12    In opposition, Defendant-in-Intervention argues that "the August 27, 2020 Default Judgment is not final or conclusive, as the trial court (J. Kathleen Mackay), is reviewing that Default Judgment because it was entered on the basis of unsworn testimony of two (2) witnesses, unsworn representations of plaintiffs' counsel . . . . [As such,] when a judgment is based on a witness's unsworn testimony or the unsworn representations of a party's counsel, the judgment

---

[30] Mot. to Strike, pp. 11-16.

**2025 VI Super 44U**

lacks supporting evidence and, consequently, must be vacated." Defendant-in-Intervention relies

upon *Henry v. Dennery (Dennery I)*, 55 V.I. 986, 993-94 (V.I. 2011), for this argument.[31]

¶13    While providing a lengthy reply addressed to other topics, regarding the Quiet Title

Judgment, Plaintiff argued, without citation to authority, that "the simple fact is that it has now

been over 4 years since the Court took SMCOCI's motion to vacate under consideration, and to

date it has not vacated or set aside the Default Judgment. As such, the Default Judgment remains

conclusive and is entitled to preclusive effect in this matter."[32]

¶14    The Court held oral arguments on December 3, 2025.[33]    When questioned at oral

arguments, counsel for Defendant-in-Intervention admitted that the motion to vacate the Quiet

Title Judgment is still pending in the Quiet Title Action and has not been acted upon for more than

120 days since the filing.[34]    Counsel for Defendant-in-Intervention also admitted that no appeal

has been taken in the Quiet Title Action. The Cout has reviewed the other pending matters in this

Court,[35] and no party has informed that Court of a pending proceeding (ether federal or local)

seeking to void the Quiet Title Judgment.

---

[31] Opp. Mot. to Strike, p. 19. This quote is the total of the substance of the argument in opposition on this point. Defendant-in-Intervention expends nearly a full page setting forth the elements of Res Judicata and Collateral Estoppel but condenses its actual argument to the quoted sentences.

[32] Repy to Opp. To Mot. to Strike, p. 10.

[33] The Court wishes to thank the Parties for their efforts in preparing for this. The case has a long and substantial history. There was also the related Quiet Title Action. The Parties exposition of the background and pending motions and arguments proved effective in allowing the Court to digest a large quantity of information in a short amount of time. Counsel are commended for their efforts.

[34] The motion to vacate was filed September 17, 2020. January 16, 2021, was the 120th day, which was a Saturday, making the 120-day deadline to rule Monday, January 18, 2021. February 18, 2021, was the 30th day after the motion to vacate was filed.

[35] This Court's docket is a public record capable of judicial notice. V.I. R. EVID. 201(c)(1), (d); *Williams v. People (Williams II)*, 78 V.I. 691, 704 (V.I. 2024); *Pedro v. Ranger Am of the V.I., Inc.*, 63 V.I. 511, 525 (V.I. 2015) (Gomez, D.J., concurring in part) ("The certified docket and the parties' motions contained therein are not, and cannot reasonably be, controverted.").

**2025 VI Super 44U**

¶15    On December 18, 2025, Defendant-in-Intervention filed in this Case a notice of filing

"Defendants' Antonious (sic) Cyril (sic) Connor and St. Mark Coptic Orthodox Church, Inc.'s

Motion to Resume Evidentiary hearing and for Ruling on Motions to Vacate Default Judgment"

in the Quiet Title Action.

## SUBJECT MATTER JURISDICTION

¶16    This Court is obligated to ensure that it has subject matter jurisdiction, as the parties to a

case cannot stipulate to the law;[36] and every Court has the obligation to ensure it is only acting

within its granted authority.[37]

¶17    When the Legislature uses legal terminology, it is presumed the Legislature understood

and intended to incorporate any existing meaning and presumptions because Legislatures are

presumed to know the law as it exists and legislate with that knowledge in mind.[38]  Section 76 of

---

[36] *Davis v. People*, 78 V.I. 624, 638 (V.I. 2023) ("This Court has repeatedly cautioned that parties may not, through explicit agreement or implicitly by omission, stipulate to the law; and thus, the Superior Court possesses an obligation to apply the law correctly and not blindly follow the erroneous interpretations proffered by the parties." (internal quotations and alterations omitted) (citing *Simmonds v. People*, 59 V.I. 480, 493 (V.I. 2013); *Heywood v. People*, 63 V.I. 846, 855 (V.I. 2015); *Dennery II*, 2013 WL 206128, at *2)).

[37] *Brunn v. Dowdye*, 59 V.I. 899, 904 (2013) ("Prior to considering the merits of a matter before it, a court is obligated to examine whether it has subject matter jurisdiction over the dispute. [If] the pertinent [statutory] provisions . . . are jurisdictional, the Superior Court correctly questioned whether the statute's requirements were satisfied." (citing *V.I. Gov't Hosp. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008))).

[38] *Richards v. Pub. Emps. Rels. Bd.*, 2024 VI 37, ¶ 23 ("When enacting a statute, the Legislature is presumed to know the existing state of the law." (alterations and internal quotations omitted) (citing *People v. Looby*, 68 V.I. 683, 696 (V.I. 2018); *Cascen v. People*, 60 V.I. 392, 404 (V.I. 2014))); *Brooks*, 58 V.I. at 428; *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011))); *Cascen*, 60 V.I. at 404-05 (observing that the Legislature "is presumed to know the common law [in existence] before ... [a] statute was enacted" and that because it is also presumed that "statutes are consistent with the common law," courts will "not presume that the Legislature intends to abrogate or modify a common law rule except to the extent expressly declared or clearly indicated" in a statute (alterations in original) (citations omitted)); *Davis v. People*, S. Ct. Crim. No. 2015-0061, 2015 WL 9255384, at *3 (V.I. Dec. 16, 2015) (unpublished) (legislatures are presumed to know long-standing procedures and practices); *Evans-Freke*, 75 V.I. at 445 ("Lastly, regarding consideration of context, legislatures are presumed to know the common law of the United States and to have incorporated it in all its relevant aspects into any statutory codification of the common law." (citing *Greer v. People*, 74 V.I. 556, 582 nn.26-27 (V.I. 2021); *United States v. Arredondo*, 31 U.S. (6 Pet.) 691, 743 (1832))); *Baumann v. V.I. PERB*, 68 V.I. 304, 339 (V.I. 2018) (observing that it is "presumed that the Legislature enacts statutes with knowledge of the common law and court decisions" addressing a subject (citations omitted)); *e.g., Alexander v. Wilson*, 73 V.I. 528, 535 (V.I. 2020) (" [I]t is well-established that a court of general jurisdiction is presumed to

**2025 VI Super 44U**

Title 4 of the Virgin Islands Code provides that the Superior Court is a court of "general

jurisdiction."[39] Courts of general jurisdiction are presumed to have subject matter jurisdiction over

both the parties[40] and subject matter before them.[41] The Court is unaware of any matter capable

of judicial notice that would divest it of subject matter jurisdiction or otherwise require it to refrain

from action.[42] While this Court must ensure it possesses subject matter jurisdiction, under the

---

possess subject-matter jurisdiction . . . ." (citation omitted)); *see Greer*, 74 V.I. at 583 ("[A] codification of a common law crime is presumed to incorporate the substance of the common law." (citing *Wallace v. People*, 71 V.I. 704, 763 (V.I. 2019) (Swan, J., concurring); *United States v. Wells*, 519 U.S. 482, 491 (1997); *United States v. United States Gypsum Co.*, 438 U.S. 422, 436 (1978); *Morisette v. United States*, 342 U.S. 246, 251-52 (1952); *Baumann*, 68 V.I. at 339; *State v. Pike*, 49 N.H. 399, 406 (N.H. 1870); *Mayo v. Wilson*, 1 N.H 53, 55 (N.H. 1817); *Thurber v. Blackbourne*, 1 N.H. 242, 245 (N.H 1818))); *cf. R.J. Reynolds Tobacco Co. v. Gerald*, 76 V.I. 656, 678-79 (V.I. 2022) ("[T]rial courts are presumed to be aware of the law, and thus are aware of the effect of their failure to rule on a motion within the mandated period. Consequently, when asked to review a post-judgment motion that has been deemed denied that would ordinarily be reviewed only for abuse of discretion, appellate courts presume that the trial court was aware of the motion yet chose to exercise its discretion to deny it and apply the traditional abuse of discretion standard of review based on the assumption that the trial court rejected all the arguments in the motion." (citing *Atlantic Human Resources, LLC v. Espersen*, 76 V.I. 583, 608 (V.I. 2022); *Moore v. State*, 309 P.3d 1242, 1246-47 (Wyo. 2013); *Bridgewater Quality Meats, LLC v. Heim*, 729 N.W.2d 387, 392 (S.D. 2007); *In re Shepard's Est.*, 34 Cal. Rptr. 212, 215-16 (Cal. Ct. App. 1963))).

[39] *Evans-Freke*, 75 V.I. at 450-51 (Swan, J., concurring) ("[W]hen the Legislature chose to divest the District Court of subject matter jurisdiction over matters arising under Virgin Islands law, the Superior Court became the only trial court of record with general civil jurisdiction (including Divorce Jurisdiction), and all the common law presumptions and burdens became applicable."); *see* 4 V.I.C. §§ 76(a); 2(a)

[40] No party has challenged any aspect of this Court's personal jurisdiction in the present Case, thus waiving any such challenge and establishing personal jurisdiction over all the Parties. *Skepple*, 69 V.I. at 744 (defendant waives challenges to personal jurisdiction when not timely raised); *cf. id* at 746 n.36 ("*Sachs v. Sachs*, 265 F.2d 31, 33 (3d Cir. 1959) ("Plaintiff, having submitted himself to the jurisdiction of the district court by filing [their] complaint and appearing therein, put it within the power of the court to render a personal judgment against [them] on the counter claim." (citing *Adam v. Saenger*, 303 U.S. 59 (1938)); *Perrin v. Perrin*, 408 F.2d 107 (3d Cir. 1969); *Prosser v. Prosser*, 33 V.I. 32, 40 (V.I. Super. Ct. 1995); *Isaac v. Isaac*, 25 V.I. 36, 39 (V.I. Super. Ct. 1990).").

[41] *Alexander*, 73 V.I. at 535 (Plaintiff "was not required to preemptively plead in [their] initial complaint any facts in anticipation of the defendants asserting non-compliance with the VITCA. [I]t is well-established that a court of general jurisdiction is presumed to possess subject-matter jurisdiction . . . ." (citation omitted)); *Willis v. People*, 71 V.I. 789, 818 (V.I. 2019) (Swan, J., concurring) ("[T]here are certain presumptions that apply with regards to challenges to the trial court's jurisdiction. Courts of general jurisdiction are presumed to have jurisdiction over both the cause of action and the parties, which by extension includes a presumption that process was served correctly. This presumption is dispositive absent contradiction in the record or contradiction by extrinsic evidence." (citing *Milliken v. Meyer*, 311 U.S. 457, 462 (1940); *Hanley v. Donoghue*, 116 U.S. 1, 5 (1885); *Cooper v. Reynolds*, 77 U.S. (10 Wall.) 308, 316 (1870))); *see* 4 V.I.C. §§ 76(a); 2(a).

[42] *See generally Cianci*, 64 V.I. at 687-88 ("'Congress, in enacting 11 U.S.C. § 362(a) and its predecessor statute, did not divest state and territorial courts of jurisdiction over proceedings against those who have sought bankruptcy protection in federal court.'" (quoting *Brouillard v. DLJ Mortg. Capital, Inc.*, 60 V.I. 763, 765 (V.I. 2014) (collecting cases))).

**2025 VI Super 44U**

present facts and in the absence of argument by a party raising such facts to the Court's attention, the presumption of subject matter jurisdiction remains unrebutted. This Court possesses subject matter jurisdiction.

## ISSUES

¶18 While Plaintiffs do not use the applicable terminology and fail to cite the applicable rule, Plaintiffs ask this Court to reconsider its prior ruling that Defendant-in-Intervention has a sufficient interest in this litigation to justify granting intervention.[43] "A motion to reconsider must be based on," *inter alia*, an "intervening change in controlling law" and/or "availability of new evidence."[44] Furthermore, "[t]h[e Virgin Islands Supreme] Court has noted on multiple occasions that 'regardless of any procedural rules, the common law confers trial courts with the discretion to revise an interlocutory order at any time prior to entry of a final judgment' . . . ."[45]

¶19 The arguments of Defendant-in-Intervention present the question of whether the Quiet Title Judgement is void, either for lack of personal jurisdiction due to a failure of service of process or because one (or more) witnesses at the default judgment hearing in the Quiet Title Action were not subject to the penalty of perjury before providing testimony. If any one of the four essential

---

[43] *Davis v. People*, 76 V.I. 514, 526 n.4 (V.I. 2022) (Swan, J., concurring) (citing *Balboni v. Ranger Am. of the V.I.*, 10 V.I. 1048. n.4 (V.I. 2019)); *Balboni*, 10 V.I. at 1048. n.4 ("It is well-established that it is the content and substance of an argument, rather than its form or title, that is controlling." (citing *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 611-12 (V.I. 2012); *Hughley v. Gov't of the V.I.*, 61 V.I. 323, 333 (V.I. 2014))); *Hughley*, 61 V.I. at 333 (noting that litigants need not use "magic words"); *see Sorenson*, 67 V.I. at 872 (acknowledging that it is the substance of a court's actions rather than the label the court applies that controls (citing *Bryan v. Fawkes*, 61 V.I. 416, 452 n.17 (V.I. 2014))); *Penn*, 67 V.I. at 898-99 ("[C]ourts should examine, not just the nominal label (or, as here, the absence of a label), but the substance of what is requested." (citing *Jarbough v. Attorney Gen.*, 483 F.3d 184, 189 (3d Cir. 2007))); *Toussaint v. Stewart*, 61 V.I. 931, 947 (V.I. 2017) (citing *Bryan*, 61 V.I. at 467 n.30; *Anthony v. First Bank V.I.*, 58 V.I. 224, 228 n.5 (V.I. 2013); *Bertrand*, 57 V.I. at 611-12; *Joseph v. Gov't of the V.I.*, 54 V.I. 644, 648 n.2 (V.I. 2011); *Penn*, 67 V.I. at 898-99; *Jarbough*, 483 F.3d at 189).

[44] V.I.R. CIV. P. 6-4.

[45] *Looby*, 68 V.I. at 690 (quoting *People v. Armstrong*, 64 V.I. 528, 535 (V.I. 2016); and citing *Bertrand*, 57 V.I. at 609).

**2025 VI Super 44U**

elements of a valid judgment is absent, a judgment is void; and it is error to enforce a void judgment.[46] Therefore, the Court will first consider whether the Quiet Title Judgment is facially[47] valid, final, and enforceable as part of its determination of whether the granting of intervention was erroneous.

## ANALYSIS

¶20    The Court must ensure that the proper foundation for a valid Final Judgment[48] was laid in the Quiet Title Action.[49] There are four requirements to a valid judgment: (1) subject matter

---

[46] *Skepple*, 69 V.I. at 718-21.

[47] The parties in the Quiet Title Action submitted opposing affidavits therein. These affidavits create factual conflicts that must be resolved through evaluation of the probative value of evidence and credibility of witness testimony. *id.* at 732 (citing *Armstrong*, 64 V.I. at 536-37; *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 558 (V.I. 2015); *Boynes v. Transp. Servs. of St. John, Inc.*, 60 V.I. 453, 465 (V.I. 2014); 5 V.I.C. § 114(a)(2)-(3); *Bertrand*, 57 V.I. at 616, 625; *Molloy*, 56 V.I. at 172; *Ernest*, 64 V.I. at 642-43). However, it is error for one Judge of this Court to rule on any matter pending before another Judge of this Court. *Vanterpool v. Gov't of V.I.*, 63 V.I. 563, 574 (V.I. 2015) (quoting *State v. Irby*, 848 N.W.2d 515, 518 (Minn.2014); and citing *State v. Harris*, 667 N.W.2d 911, 920 (Minn.2003); *In re Guardianship of Hughes*, 2013 WL 816447, at *10 (Cal.Ct.App.2013) (unpublished); *Aetna Life Ins. Co. v. Superior Court*, 227 Cal. Rptr. 460 (Cal.Ct.App.1986))). Any factual conflict must be resolved by the Judge assigned through the taking of evidence at a hearing. *Armstrong*, 64 V.I. at 536-37. Therefore, the Court may only conduct a facial deficiency analysis like the one conducted by the Virgin Islands Supreme Court in *Skepple*, 69 V.I. at 732-33 (A court when determining if a judgment if void, "is free to consider the evidence in the record and satisfy itself that subject matter jurisdiction to hear the case existed in the Superior Court and that personal jurisdiction of the court had attached to each party." (citing *Ernest*, 64 V.I. at 636-38; *Martinez*, 51 V.I. at 189)); *see also id.* at 731("[A is entitled to point out that] **the facts in the record demonstrate a failure to make a *prima facie* showing that service was** accomplished." (emphasis added) (citing *Molloy*, 56 V.I. at 172; *Settlemier*, 97 U.S. at 447; *Bonanno*, 2013 WL 3958772, at *3)).

[48] *Id.* at 714 & n.5 ("A 'Final Order' ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. The entry of a Final Order implicitly denies all pending motions, and all prior interlocutory orders merge with the Final Order." (citing *Simpson*, 62 V.I.at 731; *Ramirez*, 56 V.I. at 416 and citations in footnote)); *see generally Penn*, 67 V.I. at 891 n.4 (discussing the distinctions between a judgment, order, and decree); *Sorenson*, 67 V.I. at 871-72 (same); *Crooke*, 54 V.I. at 249-52 (adopting Collateral Order rule for establishing a Final Judgment); *e.g., Demming*, 66 V.I. at 506 (holding that a divorce decree is a final judgment); *Cianci*, 68 V.I. at 688 (quoting *Est. of George*, 59 V.I. at 919); *Williams I*, 58 V.I. at 347-48 (holding that a stay of execution of judgment does not render an order non-final).

[49] *See Skepple*, 60 V.I. at 724 ("'[I]n all instances the jurisdiction of the court rendering the judgment may be inquired into, and . . . allow the defendant to show that the court had no jurisdiction over [their] person.' Therefore, even though [a defendant] has waived this argument, [the Court] must consider whether the default judgment was entered without the trial court having first obtained personal jurisdiction over [the defendant] because the issuance of a judgment by a court that has not obtained personal jurisdiction over a defendant is not a valid exercise of judicial power, and the judgment is premised on a fundamental error." (quoting *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 463 (1874), and citing *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 139 (1912))); *id.*

**2025 VI Super 44U**

jurisdiction, (2) personal jurisdiction, (3) a judgment limited to issues and relief sought in the pleading, and (4) compliance generally ("notice and an opportunity to be heard") with due process (or said differently, the judgment is not otherwise void for lack of due process).[50] Defendant-in-Intervention's arguments raised in the motion for relief from judgment, made pursuant to V.I.R. CIV. P. 60, only implicate the second and fourth elements.

¶21 The following analysis is limited to those matters that this Court can appropriately consider. In *Skepple*, the Virgin Islands Supreme Court conducted a facial deficiency analysis of the proof of service of process because a court lacks discretion to decline to vacate a void judgment.[51] Similarly, this Court can consider only pure issues of law that have been fully briefed because they do not require resolution of conflicting evidence.[52] In contrast, the Court cannot

---

at 722 ("Default judgments are disfavored, and a doubtful case should be resolved in favor of vacating the default and proceeding to a decision on the merits." (citations omitted)).

[50] *Id.* at 718; *see also Reynolds v. Stockton*, 140 U.S. 254, 268 (1891).

[51] *Skepple*, 60 V.I. at 732 ("[T]he trial court lacks discretion to decline to set aside a judgment that is void." (citing *Ernest*, 64 V.I. at 638)).

[52] *E.g.*, *Erbey Holding Corp. v. Blackrock Financial Management, Inc.*, 2025 VI 25, ¶¶ 30-31 (taking judicial notice of SEC filings) ("Typically, determining whether an entity is an alter ego of another entity is itself a highly 'fact-intensive' inquiry in which a court must consider 'numerous factors' that 'may be relevant in one case and irrelevant in another.' Thus, in virtually all cases, a claim that a corporate defendant consented to personal jurisdiction through the consent of its corporate affiliates because those affiliates are its alter egos would require detailed factual findings by the trial court. But this case is distinct in one important respect: BlackRock, Inc., represented in its Form 10-K filed with the United States Securities and Exchange Commission ('SEC') that 'the Company's management directs BlackRock's operations as one business,' with 'BlackRock' and 'Company' both being defined as collectively including BlackRock, Inc. and its subsidiaries. Likewise, the applications for investment advisor registration filed with the Office of Lieutenant Governor by BlackRock Financial Management, Inc., BlackRock Capital Management, Inc., and BlackRock Investment Management, LLC also state that they are under the control of BlackRock, Inc. This Court has recognized the doctrine of judicial estoppel in the Virgin Islands 'to protect the integrity of the fact-finding process by administrative agencies and courts.' Under the judicial estoppel doctrine, courts will not reward a party that has chosen 'to play fast and loose with the court' by 'adopting inconsistent positions' before different courts or agencies. Here, BlackRock, Inc. itself, as well as the BlackRock Affiliates, represented in official filings in both the SEC and the Lieutenant Governor's Office that the BlackRock Defendants all operate as "one business" under the control of BlackRock, Inc. Because they have made these admissions in proceedings before these administrative agencies, neither BlackRock, Inc. nor the BlackRock Affiliates can permissibly argue, in the instant proceeding, that BlackRock, Inc. and the BlackRock Affiliates operate as separate businesses or that BlackRock, Inc. does not control the BlackRock Affiliates. Consequently, rather than remanding the proceeding to the Superior Court for further fact-finding, we apply the judicial estoppel doctrine to hold that the BlackRock Affiliates are alter egos of BlackRock, Inc. and that, accordingly, the BlackRock Affiliates' consent to personal jurisdiction in the Virgin Islands is legally

resolve the factual conflict created by the conflicting versions of service upon the Quiet Title

Defendants in the Quiet Title Action presented in the motions practice in that matter.[53] So, the

following sub-issues will be addressed to the extent they impact this matter and such resolution is

permitted:

1) Based on the affidavit of the process server, did the Quiet Title Plaintiff provide legal notice to the Quiet Title Defendants?

2) Was the testimony of the process server at the default judgment hearing in the Quiet Title Action necessary for entry of a valid judgment (or merely unnecessary evidence rendering the failure to swear the process server harmless error)?

3) Did the Quiet Title Defendants provide a written admission of service of process by going to the Court on January 23, 2020, and paying to obtain a copy of the summons and complaint in the Quiet Title Action from the Clerk of the Court?

4) Assuming the Quiet Title Defendants' opposing proof to be true, did the actions of Father Connor constitute an admission of "avoidance of service" or "dodging service"; and, if so, did this waive service of process?

5) Is the failure to swear a witness a mistake that renders a judgment void and capable of being collaterally attacked (or merely a voidable mistake that can only be attacked and reversed in a direct appeal)?

---

imputed to BlackRock, Inc." (quoting *Sarauw v. Fawkes*, 66 V.I. 253, 260-61, 266 (V.I. 2017); *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 587 (4th Cir. 2015))); *Cf. Skepple*, 69 V.I. at 732 ("If the Superior Court is properly presented with a challenge to personal jurisdiction, whether it is a challenge to constitutional minimum contacts, long-arm statute jurisdiction, sufficient process, or sufficient service, the court must hold an evidentiary hearing to resolve any factual dispute between the *prima facie* evidence contained in the affidavit of service and the evidence (*i.e.*, affidavit presenting facts that, if true, establish service was not properly achieved) as disputed by the party presenting the challenge. A failure to hold an evidentiary hearing is an abuse of discretion." (citing *Armstrong*, 64 V.I. at 536-37; *3RC*, 63 V.I. at 558; *Boynes*, 60 V.I. at 465; 5 V.I.C. § 114(a)(2)-(3); *Bertrand*, 57 V.I. at 616, 625; *Molloy*, 56 V.I. at 172; *Ernest*, 64 V.I. at 642-43)).

[53] It is error for one judge of this Court to decide issues in matters assigned to another judge of this court. *Vanterpool*, 63 V.I. at 574 ("Although it does not constitute a jurisdictional defect, courts have characterized claims that a particular judge or other individual lacked authority to issue dispositive rulings in a case as 'affecting substantial rights' since they 'involve a fundamental question of judicial authority.'" (alterations omitted) (quoting *Irby*, 848 N.W.2d at 518; and citing *Harris*, 667 N.W.2d at 920; *In re Hughes*, 2013 WL 816447, at *10; *Aetna Life*, 227 Cal. Rptr. 460)).

## I.   <u>Service of Process</u>

¶22    So long as it has not been established[54] that the statute of limitations has run,[55] a party to a

judgment may attack it as void at any time.[56] "The second requirement of a valid judgment is that

the trial court validly exercised personal jurisdiction over the parties, which requires consideration

of both: (a) whether the defendant had certain minimum contacts with the forum in which the court

is located and (b) whether the defendant was validly served (or waived this requirement)."[57]

"[U]nless a defendant has waived service, the defendant must either have consented to the

particular method of service utilized or be served with process by a method that is authorized by

---

[54] While expiration of the statute of limitations is an affirmative defense, *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, n.5 (V.I. 2015) ("[P]laintiffs need not anticipate the statute of limitations or other affirmative defenses when they draft their complaints. . . ."), a party may judicially admit facts establishing the limitations period has expired. *See generally Walters v. Walters*, 60 V.I. 768, 775 n.7 (V.I. 2014) ("Although 'unsworn representations of an attorney are not evidence,' an attorney's client may nevertheless be bound by such statements under the doctrines of judicial admissions and judicial estoppel. (quoting *Dennery I*, 55 V.I. at 994; and citing *Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 133 (V.I. 2009), *overruled in part on other grounds by Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (V.I. 2012); *Sobratti v. Tropical Shipping & Constr. Co.*, 267 F.Supp.2d 455, 463 (D.V.I. 2003) ("Hence, a party is precluded from retreating from a factual claim, which he affirmatively asserted in support of [their] cause of action, simply to avoid summary judgment.") (collecting cases))); *see* V.I. R. EVID. 201(c)(1), (d); *Williams II*, 78 V.I. at 704; *Pedro*, 63 V.I. at 525 (Gomez, D.J., concurring in part).

[55] *See generally* 5 V.I.C. § 31(a)(1)(B) ("Civil actions shall only be commenced within the periods prescribed below after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute: (1) Twenty years[—]An action upon a judgment or decree of any court of the United States, or of any State, Commonwealth, or Territory within the United States."). As an action collaterally attacking a judgment to have it declared void is a civil action founded upon a judgment, the 20-year limitations period appears to apply. *See generally Skepple.*, 69 V.I. at 710 ("[A] civil action, [is] 'an action to enforce, redress or protect a private or civil right.'" (quoting *In re Najawicz*, 52 V.I. 311, 335 (V.I. 2009); and citing BLACK'S LAW DICTIONARY 32 (8th ed. 2004))); *Magens Point Resort Hotel v. Benjamin*, 58 V.I. 191, 197 n.3 (V.I. 2009) ("The Supreme Court of the United States has described litigation initiated to enforce a judgment as an 'action.'" (quoting *McKnett v. St. Louis & S.F. Ry. Co.*, 292 U.S. 230, 233 (1934); and citing BLACK'S L. DICT., at 31 (defining 'action' as 'a civil or criminal judicial proceeding.')); *In re Moorhead*, 27 V.I. 74, 85 (V.I. Super. Ct. 1992) (stating that civil actions include all actions brought to enforce, redress, or protect private rights, other than criminal proceedings).

[56] V.I.R. Civ. P. 60(b)(4) (allowing motion to vacate a void judgment and not providing a time limit).

[57] *Skepple*, 69 V.I. 700, 718–19 (citing 5 V.I.C. §§ 4902, 4903(a)(1-8); *Stockton*, 140 U.S. at 268; *Bryan*, 61 V.I. at 441; *Najawicz*, 52 V.I. at 338; *Isaac*, 25 V.I. at 39).

**2025 VI Super 44U**

law."[58] "'[T]he plaintiff bears the ultimate responsibility to prove by a preponderance of evidence that the trial court may exercise personal jurisdiction,' including valid service of process . . . ."[59]

¶23    The Virgin Islands Supreme Court has noted "that '[o]bjections to personal jurisdiction— including objections to process and service—are personal defenses that are waived if not raised in a timely manner. As such, consent to and waiver of personal jurisdiction could be effectuated by innumerably varying facts. Such consent to being subject to a state's power may be express or implied through words or conduct and can result from the acts of both the person or [their] agent.'"[60] Notably, "a failure to timely assert a violation of due process—whether it is a general due process violation or a due process violation relating specifically to validity of process, service of process, the statutory basis for the exercise of personal jurisdiction, or personal jurisdiction minimum contacts—will result in such claim of error being waived."[61] Also, "a defendant's refusal to accept service or a defendant's avoidance of service will not defeat personal jurisdiction . . . ."[62] "Regardless of how the waiver [or consent] occurs, when a party voluntarily appears, the court obtains jurisdiction over [their[63]] person, and service is unnecessary."[64]

¶24    Considering these standards, the Court will first consider whether "the facts in the record demonstrate a failure to make a *prima facie* showing that service was accomplished"[65] upon the

---

[58] *Id.* at 726 (citing *Joseph v. Daily News Publ'g Co.*, 57 V.I. 566, 580 n.4 (V.I. 2012); 5 V.I.C. § 115).

[59] *Id.* at 731.

[60] *Erbey Holding*, 2025 VI 25, ¶ 27 (quoting *Skepple*, 69 V.I. at 744-45).

[61] *Skepple*, 69 V.I. 700, 722 (2018) (citing *Ruiz v. Jung*, S. Ct. Civ. No. 2008-0035, 2009 WL 3568182, at *4-5 (V.I. Oct. 19, 2009) (unpublished)).

[62] *Id.* at 731 (citations omitted).

[63] *See generally Evans-Freke*, 75 V.I. at 462 n.39 ("*They*, merriam-webster.com, http://www.meriam-webster.com/dictionary/they (last visited Oct. 25, 2021) (updating the usage of they to "[be] used with a singular antecedent to refer to an unknown or unspecified person" or "to refer to a single person whose gender identity is nonbinary")).

[64] *Id.* at 745–46 (citing *Caledonian Coal Co. v. Baker*, 196 U.S. 432, 444 (1905)).

[65] *Id.* at 731 (citing *Molloy*, 56 V.I. at 172; *Settlemier*, 97 U.S. at 447; *Bonanno*, 2013 WL 3958772, at *3).

2025 VI Super 44U

Quiet Title Defendants.  The Court will then consider what impact, if any, the testimony of the process server at the default judgment hearing in the Quiet Title Action had upon the Quiet Title Judgment.  Last in its service of process analysis, the Court will consider whether the facts in the record show that the Quiet Title Defendants somehow waived service of process or consented to personal jurisdiction.[66]

### A. The Affidavit of the Process Server of the Quiet Title Plaintiff was Sufficient to *Prima Facie* Prove Service of Process and, thus, Establish Legal Notice of the Quiet Title Action to the Quiet Title Defendants.

¶25    The Virgin Islands Supreme Court has held that an affidavit is adequate to *prima facie* prove service of process.[67]  When considering a plaintiff's initial proof of service, "[t]he trial court 'must accept as true all of the factual allegations that are supported by the affidavits or other competent evidence which would be admissible at trial and must resolve all factual disputes in the plaintiff's favor.'"[68]  The process server in the Quiet Title Action declared under penalty of perjury that they were over 18 and resident in the Territory and further declared that they were neither a party to the Quiet Title Action nor "related to"[69] any of the Quiet Title Parties.  The summons and

---

[66] *E.g., Id.* at 746–47 ("[I]f a party challenges personal jurisdiction and that challenge is found to lack merit, the failed challenge to jurisdiction is considered a voluntary appearance and a submission to the personal jurisdiction of the court.  Because [the defendant] filed a motion to vacate the default judgment but failed to raise an argument that was legally sufficient to challenge the Superior Court's personal jurisdiction, [the defendant] voluntarily appeared in this action, thus submitting [them]self to the Superior Court's authority." (citing *In re Expungement of Criminal Record*, S. Ct. Civ. No., 2016-0007, 2017 WL 283478, at *1 n.1 (V.I. Jan. 23, 2017)); *cf. Erbey*, 2025 VI 25, ¶¶ 30-31 (taking judicial notice of SEC filings).

[67] *Skepple*, 69 V.I. at 730.

[68] *Id.* at 716 (quoting *Molloy*, 56 V.I. at 173; and citing *Metcalfe v. Renaissance Marie, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *Ford v. Amber Cape Prods., LLC*, No. 2009-144, 2010 WL 3827321, at *3 (D.V.I. Sept. 30, 2010) (unpublished)).

[69] The Court recognizes that process must be served by a "disinterested" non-party.  4 V.I.C. § 82(d) (disinterested); V.I.R. CIV. P. 4(c)(2) (non-party).  Without question, a simple comparison of the names of the Quiet Title Parties to that of the process server establishes the process server was not a party, thus establishing compliance with V.I.R. CIV. P. 4(c)(2).  As is material to the present analysis, "Related" is defined as "having some relation; closely connected."  "Relate" is defined, as material to the present analysis, as "to be in some relation to; to be a relative."  "Relation" can be defined as either "a kinsman or relative" or "the position in which one thing or concept stands with regard to

**2025 VI Super 44U**

complaint in the Quiet Title Action were served upon Antonius Cyril Connor, who was at that time

both a Quiet Title Defendant and the president of Quiet Title Defendant St. Mark Coptic Church,

Inc., on January 23, 2020.

¶26    Personal service, in hand, upon a defendant is the "gold standard" (so to speak) of legal

notice, *i.e.*, service of process.[70]   As president of a juridical[71] defendant, Quiet Title Defendant St.

---

another." WEBSTER'S UNIFIED DICTIONARY AND ENCYCLOPEDIA, 3565 (Adams, et al, eds. 1959). While the **best practice** would have been for the process server to explicitly declare that they are not a officer, director, member, shareholder, manager of, employed by, or financially dependent upon any juridical party to the matter being served, as a matter of fact, there is sometimes a very fine line between determining whether certain information is factually insufficient and advocacy.  Taking the process server's words in the colloquial way in which lay persons speak, *see generally Willis*, 71 V.I. at 830 (Swan, J., concurring) ("To [understand a] word or phrase according to its plain meaning—that is to say, to give the word its relevant meaning in context—requires that, first, the words of the relevant provision be read in the common understanding of the average person from whose lexicon the language is taken." (citation omitted)), the forgoing definitions support the conclusion that a personal factual declaration under penalty of perjury identifying the declarant by name and further declaring that a person is not "related' to any party is factually broad enough and specific enough to constitute adequate factual support of service by a person without an interest in the outcome.  While further information could prove such a declaration incorrect in a collateral attack, the Court believes such a decision falls on the side of strategy rather than the side of substantive legal sufficiency of the facts declared.  If plaintiff and their counsel choose to use non-specific statements of fact and run the risk of the judgment being declared void due to inadequate proof of service of process in a collateral attack that could be brought within 20 years of entry of the judgment, *see generally* 5 V.I.C. § 31(a)(1)(B) ("Civil actions shall only be commenced within the periods prescribed below after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute: (1) Twenty years[—]An action upon a judgment or decree of any court of the United States, or of any State, Commonwealth, or Territory within the United States."), that is their risk to take. The mandates of Virgin Islands Rule of Civil Procedure 1 are not so expansive as to require the Court to dictate a plaintiff's proof.  As an action collaterally attacking a judgment to have it declared void is a civil action founded upon a judgment, the 20-year limitations period appears to apply.  *See generally Skepple.*, 69 V.I. at 710 ("[A] civil action, [is] 'an action to enforce, redress or protect a private or civil right.'" (quoting *Najawicz*, 52 V.I. at 335; and citing BLACK'S L.DICT., at 32)); *Magens Point Resort Hotel*, 58 V.I. at 197 n.3 ("The Supreme Court of the United States has described litigation initiated to enforce a judgment as an 'action.'" (quoting *McKnett*, 292 U.S. at 233; and citing BLACK'S L. DICT., at 31 (defining 'action' as 'a civil or criminal judicial proceeding.')); *Moorhead*, 27 V.I. at 85 (stating that civil actions include all actions brought to enforce, redress, or protect private rights, other than criminal proceedings).

[70] *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351 (1999) ("Unless a named defendant . . . waive[s] service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights.").

[71] *See generally City of Alexandria v. Fairfax*, 95 U.S. 774, 779 (1877) ("[A]n incorporated [entity] is not an individual, and service of notice or process on one of its [shareholders] is not service on it.  It has its officers, who speak and act for it by authority of law; and some one of these officers, either by an express statutory provision, or by the nature of their functions, is the proper person on whom all notices and processes necessary to bind it by judicial proceedings must be served."); *Defoe v. Phillip*, 56 V.I. 109, 129 (V.I. 2012) ("[W]e recognize the principle that [juridical persons] may only act through their agents . . . ." (citing *Tavarez v. Klingensmith*, 372 F.3d 188, 191-92 (3d Cir. 2004)); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707 (V.I. 2014) (Juridical persons, "separate and apart from the human beings who own, run, and are employed by them, cannot do anything at all."); *City of St. Louis v. Praprotnik*,

2025 VI Super 44U

Mark's, Quiet Title Defendant Connor was an appropriate person upon whom service could be had for both Quiet Title Defendants.[72] The Quiet Title Plaintiff submitted the affidavit of the process server who personally served a copy of the summons and complaint on Quiet Title Defendants. This was sufficient to *prima facie* prove service of the Quiet Title summons and complaint upon Connor and, therefore, established legal notice to the Quiet Title Defendants. The Quiet Title Judgment was supported by proof of service of process that was facially valid.

¶27    While the initial proof is not deficient, the Court must consider each basis upon which the Quiet Title Judgment may be void because "[a] 'failure to vacate a void judgment is *per se* an abuse of discretion.'"[73] "[S]aid differently, the trial court lacks discretion to decline to set aside a judgment that is void."[74]

   B. **Because the Quiet Title Plaintiff had *Prima Facie* Proven Service of Process, the Testimony of the Process Server at the Default Judgment Hearing was Superfluous; and any Error in Failing to Swear this Witness was Harmless.**

¶28    Because, prior to the default judgment hearing in the Quiet Title Action, the Quiet Title Defendants had not submitted an affidavit contradicting the process server's affidavit of service and the affidavit was *prima facie* sufficient to prove service of process,[75] and there was no factual dispute for resolution. Therefore, the process server's testimony was not necessary to allow entry of a valid judgment. Absent an affidavit from the Quiet Title Defendants presenting contradictory

---

485 U.S. 112, 167 (1988) ("[A] corporation is incapable of doing anything except through the agency of human beings . . ." (citing *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978))); *Evans-Freke,* 75 V.I. at 434 (Swan, J., Concurring) (citing BLACK'S L. DICT., 1258 (defining "juridical person")).

[72] V.I.R. CIV. P. 4(h)(1)(A)(ii) (service upon officers of corporation valid).

[73] *Skepple,* 69 V.I. at 733 (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1217 (11th Cir. 2009); and citing *Hart v. Sansom,* 110 U.S. 151, 155 (1884)).

[74] *Id.* at 732 (citing *Ernest,* 64 V.I. at 638-39).

[75] *Id.* at 731 (citing *Molloy,* 56 V.I. at 172; *Settlemier,* 97 U.S. at 447; *Bonanno,* 2013 WL 3958772, at *3).

facts,[76] the initial affidavit of the process server in the Quiet Title Action remained sufficient proof

of service of process.

¶29    Notably, the subsequent submission of evidence showing either a failure of service or a

failure of proof of service does not render invalid either valid prior or subsequent service.[77]

Whatever testimony was given by the process server at the default judgment hearing was entirely

unnecessary and irrelevant (as it would not have invalidated the prior proof of service),[78] and the

failure to swear the process server prior to taking their testimony was harmless error.[79]

---

[76] *Id.* at 731

[77] *Id.* at 731–32 (citing *Bonanno*, 2013 WL 3958772, at *7).

[78] Certified transcripts of court proceedings are public records capable of judicial notice. *Williams II*, 78 V.I. at 704 ("Accordingly, we take judicial notice that the People presented numerous trial witnesses whose testimony the jury had latitude to evaluate." (citing V.I.R. EVID. 201(c)(1); V.I.R. EVID. 201(d); *Codrington v. Gov't of the V.I.*, 2016 WL 6948761, at *3 n.9 (V.I. Super. Ct. Nov. 18, 2016) (unpublished); *Gottsch v. Bank of Stapleton*, 458 N.W.2d 443,455 (Neb. 1990); *Moore v. Walters*, 61 V.I. 502, 505 n.2 (V.I. 2014); *Phonometrics, Inc. v. Hospitality Int'l, Inc.*, 120 Fed. Appx. 341, 345 (Fed. Cir. 2005))); *Codrington*, 2016 WL 6948761, at *3 n.9 ("A court will take judicial notice of its own acts and records in the same case, of facts established in prior proceedings in the same case, of the authenticity of its own records of another case between the same parties, of the files of related cases in the same court, and of public records on file in the same court." (quoting *Gottsch*, 458 N.W.2d at 455)); *Moore*, 61 V.I. at 505 n.2 (court does not err in taking judicial notice of transcripts of prior court proceedings because those transcripts were sources "whose accuracy cannot reasonably be questioned" within the intendment of Rule 201(b) (citing *Phonometrics*, 120 Fed. Appx. at 345)); *e.g.*, *Dennery I*, 55 V.I. at 993 (relying upon certified trial transcripts when determining there was no legal notice). The transcripts that have been submitted in this matter (listed above) do not contradict the process server's initial proof of service, making such facial analysis inapplicable. Had the process serve contradicted their own affidavit, that would have created a factual conflict requiring resolution. *See Skepple*, 69 V.I. at 732 ("If the Superior Court is properly presented with a challenge to personal jurisdiction, whether it is a challenge to constitutional minimum contacts, long-arm statute jurisdiction, sufficient process, or sufficient service, the court must hold an evidentiary hearing to resolve any factual dispute between the *prima facie* evidence contained in the affidavit of service and the evidence (*i.e.*, affidavit presenting facts that, if true, establish service was not properly achieved) as disputed by the party presenting the challenge. A failure to hold an evidentiary hearing is an abuse of discretion." (citing *Armstrong*, 64 V.I. at 536-37; *3RC.*, 63 V.I. at 558; *Boynes*, 60 V.I. at 465; 5 V.I.C. § 114(a)(2)-(3); *Bertrand*, 57 V.I. at 616, 625; *Molloy*, 56 V.I. at 172; *Ernest*, 64 V.I. at 642-43)). In the absence of any internal factual inconsistencies between the server's affidavit and testimony, the Court believes an analysis similar to the facial deficiency analysis conducted in *Skepple* would be warranted. *E.g.*, 69 V.I. at 732–33 ("We review the facts as presented in the record and determine whether there has been a *prima facie* showing of compliance with the requirements of the method of service." (citing *Dennery I*, 55 V.I. at 993; *Old Wayne Mut. Life Asso. v. McDonough*, 204 U.S. 8, 15-16 (1907); *Conn. Mut. Life Ins. Co. v. Spratley*, 172 U.S. 602, 615-16 (1899))).

[79] V.I.R. CIV. P. 61 (harmless error not basis for reversal, "unless justice requires otherwise"). Because failure to apply the doctrine of Harmless Error in the present procedural posture would amount to nothing more than waste of time and effort, *cf.* V.I.R. CIV. P. 1; V.I. SUPER. CT. R. 1; *World Fresh Markets*, 71 V.I. at 1181 ("[T]he Virgin Islands Rules of Civil Procedure, must be 'construed, administered, and employed by the court ... to secure the just, speedy, and inexpensive determination of every action and proceeding.'" (quoting V.I. R. Civ. P. 1)), the Court

**2025 VI Super 44U**

¶30    Because the Court has been unable to locate binding precedent factually analogous to the

issue decided here, the Court will consider alternative bases for determining the validity of the

Quiet Title Judgment.

C. **Because There is no Proof the Quiet Title Defendants Received a Copy of the
Summons When they Paid the Clerk of Court the Required Fee to Obtain a Copy of
the Quiet Title Complaint, the Docket Entry and Receipt for This Transaction do Not
Constitute a Written Admission of Service of Process Within the Meaning of
Subsection 114(a)(4) of Title 5 of the Virgin Islands Code.**

¶31    In the absence of receipt of a summons, the plain text of section 114 of title 14 of the Virgin

Islands Code is not satisfied by the notation and docketing of a receipt for the purchase of a copy

of the complaint.  On January 23, 2020, Defendant Connor obtained a copy of the complaint in the

Quiet Title Action.[80]  The "receipt"[81] generated in such a transaction contains all the information

that would be expected (date, time, case number, case title, judge, whether is it active or inactive,

date of the receipt, amount, etc.) as well as the name of the "payor."[82]  It does not require a

signature of the payor and does not identify which documents were requested and copies

provided—the receipt only states the total fee charged.  The Clerk of the Court noted that it was

the complaint that was copied and provided.[83]

---

believes it is best to apply a harmless error analysis to any asserted error in any collateral attack on a Final Judgment.
*See Skepple*, 69 V.I. at 733 (The respect for finality of judgments being great, the concept of a void judgment must be
narrowly construed.).

[80] Docket Entry 11, "Customer Assistance-Walk In," Jan. 23, 2020; Docket Entry 12, "FEE RECEIVED, RECEIPT
# - 00188935."

[81] This is the label given the form.  However, given the extent of the substantive content, most people would
colloquially be more likely to apply the term "invoice."  While there is no material legal distinction to these terms
under the present facts, the extent of information potentially contained in such a "receipt" is much more extensive that
most people would expect from use of that term.

[82] Receipts generated by the cashier of this Court are created by filling in the required information on a standard form.
As such, the Court may take judicial notice of the information requested in that form during such transaction.  Also,
the receipt is an official court record capable of judicial notice.  V.I. R. EVID. 201(c)(1), (d); *Williams II*, 78 V.I. at
704; *Pedro*, 63 V.I. at 525 (Gomez, D.J., concurring in part).

[83] To avoid any confusion created by this recitation of facts, the Court specifically notes that the Clerk's office recorded
in a separate entry on the same date and time that a copy of the complaint was provided.

**2025 VI Super 44U**

¶32    This Court entered the Quiet Title Judgment on August 27, 2020.

¶33    Without question, the Quiet Title Defendants had actual notice of the Quiet Title Action

before their arrival at the office of the Clerk of the Court on January 23, 2020; or they would not

have known to retrieve a copy of the complaint from the Clerk of the Court. Moreover, on January

23, 2020, by obtaining a copy of the complaint from the Clerk of Court, the Quiet Title Defendants

had actual notice of the substantive content of the claims therein.[84] This presents a simple question

of whether the actions of a defendant[85] in going to the office of the Clerk of the Court and obtaining

a copy of the complaint in an action against them constitute a "written admission" stating the time

and place of "service," as required by subsections 114(a)-(b) of title 5 of the Virgin Islands Code.

¶34    To begin, there is no question about the place at which the Quiet Title Defendants obtained

the complaint because the docket of this Court is a public record only available to the public

through inquiry in the office of the Clerk of the Court. The Court is located at the Alexander A.

Farrelly Justice Complex on St. Thomas. And, the Quiet Title Defendants did so on January 23,

2020. There is likewise no question that the Clerk's office made a written notation that Father

Connor obtained a copy of the complaint. Furthermore, there is no question that conduct is

---

[84] *See generally Skepple*, 69 V.I. at 732 n.24 ("[A]ctual notice of a lawsuit is not a substitute for legal notice, but actual notice likely justifies a discretionary extension of time . . . .").

[85] Father Connor was the President of the second Quiet Title Defendant in addition to individually being a Quiet Title Defendant. When he obtained a copy of the complaint, this action imputed knowledge onto Quiet Title Defendant St. Mark's. *See, e.g., Erbey Holding*, 2025 VI 25, ¶¶ 25-31; *see generally City of Alexandria*, 95 U.S. at 779; *Defoe*, 56 V.I. at 129 ("[W]e recognize the principle that [juridical persons] may only act through their agents . . . ." (citing *Tavarez*, 372 F.3d at 191–92); *Burwell*, 573 U.S. at 707 (Juridical persons, "separate and apart from the human beings who own, run, and are employed by them, cannot do anything at all."); *Praprotnik*, 485 U.S. at 167 ("[A juridical person] is incapable of doing anything except through the agency of human beings . . ." (citing *Monell*, 436 U.S. 658)); *Evans-Freke*, 75 V.I. at 434 (Swan, J., Concurring) (citing BLACK'S L. DICT., 1258 (defining "juridical person")).

**2025 VI Super 44U**

communicative and protected by the Constitution,[86] making it possible that the Quiet Title

Defendants could have communicated an admission through both actions and words.

¶35 However, the question at hand is whether the facts before the Court constitute the "written

admission" "of the defendant" of "service" of the "summons and complaint" within the meaning

of the statute. "[A]ll endeavors of . . . interpretation begin with a thorough consideration of the . .

. language, the . . . design, and the object of and policy underlying the statute [or rule], controlled

by a presumption that the ordinary meaning of the chosen words manifests the legislative intent

[of the statute or purpose of the rule]. The 'plain language,' that is to say, 'the intended meaning

of words and phrases is gleaned from linguistic indicators such as subject matter, context, structure,

and placement.'"[87] " [A]ll the provisions of a statute upon a subject are to be harmonized and read

together so as to effectuate the purposes of the statute. And this is to be done in the light of the

presumed desire and intent of the Legislature to enact a statute which is constitutional and

otherwise valid. Accordingly, if a statute is attacked as invalid and there is a possible construction

of it which will render it valid, the courts will adopt that construction and uphold the statute."[88]

---

[86] *See generally Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 577 (1991) (Scalia, J., concurring) ("Where the government prohibits conduct *precisely because of its communicative attributes,* we hold the regulation unconstitutional." (emphasis in original) (citing *United States v. Eichman,* 496 U.S. 310 (1990); *Texas v. Johnson,* 491 U.S. 397 (1989); *Spence v. Washington,* 418 U.S. 405 (1974); *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503 (1969); *Brown v. Louisiana,* 383 U.S. 131 (1966); *Stromberg v. California,* 283 U.S. 359, (1931))); *Gov't of Virgin Islands v. Davis,* 561 F.3d 159, 164–65 (3d Cir. 2009) (citing *Raffel v. United States,* 271 U.S. 494, 496-97 (1926); *Miranda v. Arizona,* 384 U.S. 436 (1966); *Doyle v. Ohio,* 426 U.S. 610 (1976); *Hassine v. Zimmerman,* 160 F.3d 941, 947-49 (3d Cir.1998); *United States v. Balter,* 91 F.3d 427, 439 (3d Cir.1996)).

[87] *Littoral Woodlands, LLC v. Henry,* 2025 VI Super 13, ¶63 (alterations and quotations omitted) (quoting *Willis,* 71 VI. at 824-25, 828-29)

[88] *Port Const. Co. v. Gov't of V.I.,* 359 F.2d 663, 665 (3d Cir. 1966) (citing *In Singer Sewing Mach. Co. v. Brickell,* 233 U.S. 304 (1914); *Driscoll v. Edison Light & P. Co.,* 307 U.S. 104, 114-115 (1939); *Flemming v. Nestor,* 363 U.S. 603, 617 (1960); 16 Am. Jur. 2d Constitutional Law §§ 144, 146, 147; 50 Am. Jur. Statutes, §§ 357, 358).

**2025 VI Super 44U**

¶36    To achieve this objective, the Court is to apply the "Dictionary Definition Rule," which

requires that:

> the courts of the Virgin Islands, when engaging in statutory interpretation, to first, apply any statutory definitions provided by the Legislature that are specifically applicable to the section, chapter, title, etc. under consideration; second, apply the general definitions provided in section 41 of title 1; third, apply an accumulated legal meaning as articulated in binding precedent; fourth, apply the relevant definition provided in a law dictionary or relevant persuasive authority; fifth, apply relevant technical definitions such as when professional jargon is used; and sixth, apply the common meaning as provided in a dictionary.[89]

"No rule [or statute] should be read literally if such a reading is contrary to its objective.  Although

literal interpretation is favored, 'the intention prevails over the letter.'  Indeed, this [C]ourt has

noted that 'the surest way to misinterpret a statute or a rule is to follow its literal language without

reference to its purpose.'  As Justice Roger Traynor stated, we need 'literate, not literal, judges.'"[90]

¶37    "Proof of the service of the summons and complaint . . . shall [be proved by, *inter alia*]: .

. . [t]he written admission of the defendant.  In the case of service otherwise than by publication,

. . . [a defendant's] admission must state the time and place of service . . . ."[91]  Furthermore, "[a]

voluntary appearance of the defendant [is the] equivalent to personal service of the summons upon

him."[92]

---

[89] *Id.*, ¶66 (quoting *Greer*, 74 V.I. at 580 n.22).

[90] *Gov't of V.I. v. Knight*, 989 F.2d 619, 626–27 (3d Cir. 1993) (quoting 2A N. Singer, *Sutherland Statutory Construction* § 46.07, at 126 (5th ed. 1992); *Coco Bros., Inc. v. Pierce*, 741 F.2d 675, 679 (3d Cir.1984); R. Traynor, *Reasoning in a Circle of Law*, 56 Va. L. Rev. 739, 749 (1970), and citing *Viacom Int'l Inc. v. Federal Communications Comm'n*, 672 F.2d 1034, 1040 (2d Cir.1982); *Acosta v. Honda Motor Co.*, 717 F.2d 828, 831 (3d Cir.1983)); *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) ("[A]lthough literal interpretation of a statute is favored, the intention prevails over the letter,' and thus 'no statute should be read literally if such a reading is contrary to its objective.'" (alterations and internal quotations omitted) (quoting *Knight*, 989 F.2d at 626)).
[91] 5 V.I.C. § 114(a)(4) and (b).
[92] 5 V.I.C. § 115.

**2025 VI Super 44U**

¶38    Subsection 114(b) of title 5 of the Virgin Islands Code adds the requirement that, in addition to the summons, the complaint[93] must also be served. There is no question that the Quiet Title Defendants received a copy of the complaint;[94] the docket entry plainly documents that the Quiet Title Defendants obtained a copy. The Court, therefore, considers the remainder of the text.

¶39    "Of" is a preposition that indicates "source, as of noble birth" or "from as a cause, as, he died of pneumonia."[95] "From" is a preposition meaning "out of as an origin or source, to come from a royal family . . . ."[96] A "defendant" is "a person sued in a civil proceeding . . . ."[97] So, the source of the admission of "service" must be the defendant; and that admission must be written.

¶40    A defendant going to the office of the Clerk of the Court, presenting an identification providing their name, requesting a copy of the complaint, paying the requisite fee, accepting the issued receipt documenting the defendant's name as payor, and accepting the requested copy could fall within the statutory intent of a "written" admission, especially if a signature is given (whether

---

[93] BLACK'S L. DICT., at 303 ("Complaint" "The initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's, claim and the demand for relief. In some [jurisdictions], the complaint is called a petition."); *see also In re Siyi Zhou*, 198 Fed. Appx 177, 179 (3d Cir. 2006) ("Rather than being defined by its caption, a 'complaint' is 'the initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief.'" (alteration omitted) (quoting BLACK'S L.AW DICTIONARY 285 (6th ed. 1990))); *see generally Evans-Freke*, 75 V.I. at 427n.3 (Swan, J., concurring) ("In the Virgin Islands, the terms 'petitioner' and 'respondent' are commonly used. However, with the merger of law and equity, there is no substantive distinction between a person seeking equitable relief in a cause of action and a person seeking to vindicate their rights in law." (citing V.I.R. Civ. P. 2; *Lacatena v. Lacatena*, 2021 VI Super 36, ¶1)).

[94] 5 V.I.C. § 114(a) ("Proof of the service of the summons and complaint or of the deposit thereof in the post office, shall be as follows . . . ."). This mirrors the requirement of Virgin Islands Rule of Civil Procedure 4(e)(1), which also require both the summons and complaint be served. V.I.R. CIV. P. 4(e)(1); *see generally Toussaint*, 67 V.I. at, 944 n.7; *Skepple*, 69 V.I. at 733 ("[The plaintiff's] agent, the server, made no efforts to leave process (*i.e.*, the summons) and the complaint with or near [the defendant]. Because these documents were not left with [the defendant], the fundamental purposes of service were not fulfilled.").

[95] WEBSTER'S UNIFIED DICTIONARY AND ENCYCLOPEDIA 3044 (Lewis M. Adams et al eds. 1959).

[96] *Id.* at 1677.

[97] BLACK'S L. DICT., at 450.

2025 VI Super 44U

as proof of receipt of the copied document or to authorize the payment); but the Court need not decide this issue presently.

¶41    Because neither the January 23, 2020 receipt nor the docket entry note that the summonses were copied and given to the Quiet Title Defendants, the receipt and docket entries could never factually constitute an admission of service by the Quiet Title Defendants within the meaning of subsections 114(a)(4) and (b) of title 5 of the Virgin Islands Code. "Service" is "the formal delivery of a writ, summons, or other legal process <after three attempts, service still had not been accomplished>. Also termed service of process."[98] A "summons" is "a writ or process commencing the plaintiff's action and requiring the defendant to appear and answer."[99]

¶42    The Virgin Islands Supreme Court has explained that "[p]rocess is the trial court's citation/writ by which a person is 'formally called upon by a court of competent jurisdiction to give information to it, in an adversary proceeding against him.' Process must inform of when and

---

[98] BLACK'S L. DICT. at 1399; *see also Skepple,* 69 V.I. at 710–13 nn.1-2:

> Black's L. Dict., at 1399 (defining "serve" as meaning "to make legal delivery of (a notice or process)," as in "<a copy of the pleading was served on all interested parties>"; or "to present (a person) with a notice or process as required by law," as in "<the defendant was served with process>").

> Service of process "is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party." *Miss. Publ'g Corp. v. Murphree,* 326 U.S. 438, 444-45 (1946). More formally, service of process is "[t]he formal delivery of a writ, summons, or other legal process," Black's L. Dict., at 1399, and grew out of the common law practice where "jurisdiction over a person [wa]s based on the power of the sovereign asserting it to seize that person and imprison him to await the sovereign's pleasure." *Mich. Trust Co. v. Ferry,* 228 U.S. 346, 353 (1913); *see generally Toussaint v. Stewart,* 67 V.I. 931, 943 n.7 (V.I. 2017) (defining process); 1 V.I.C. § 41 (" 'process' signifies a writ or summons issued in the course of judicial proceedings").

[99] BLACK'S L. DICT., at 1477; *see, e.g., Skepple,* 69 V.I. at 733 ("[The plaintiff's] agent, the server, made no efforts to leave **process (*i.e.,* the summons) and the complaint** with or near [the defendant]. Because these documents were not left with [or near], the fundamental purposes of service were not fulfilled." (emphasis added)). The Virgin Islands Supreme Court's acknowledgement in *Skepple* that "process" is different than the "complaint" implicitly recognized that Virgin Islands Law mandates service of both the summons and complaint in order to constitute legal notice.

**2025 VI Super 44U**

where to answer, the time in which return of service of process must be made, and other essential information to constitute due process of law."[100] "[A] summons traditionally is a document afforded special weight due to its role in the formal initiation of both civil and criminal proceedings."[101] While a document could, in practical effect, be the functional equivalent of a summons and achieve legal notice, when the document "fails to meet even the textbook definition of a summons because it does not 'require the defendant to appear and answer[,' a defendant can] never [have] been legally 'required to appear and answer.'"[102] It is axiomatic that a party who receives no document purporting to be a summons, either in label or substance, cannot be deemed to, in fact, have received the functional equivalent of a summons.

¶43 Although there is evidence from which it could potentially be found that there is a "written admission" "of the defendant" of receipt of the complaint, no such notation regarding the "summons" is made on the docket in the Quiet Title Action Therefore, the actions of the Quiet Title Defendants of obtaining a copy of the Quiet Title Complaint on January 23, 2020, did not waive service of process within the meaning of subsections 114(a)(4) and (b) of title 5 of the Virgin Islands Code.

---

[100] *Toussaint*, 67 V.I. at 944 n.7 (alterations omitted) (quoting *Kennard v. Louisiana ex rel. Morgan*, 92 U.S. 480, 482 (1875); and citing and quoting parenthetically BLACK'S L. DICT., at 1242 ("A summons or writ, esp. to appear or respond in court—Also termed judicial process; legal process."); V.I.R. CIV. P. 4(a) (requiring that the summons bear the official markings of the court and be directed to the defendant and identify the court and parties while stating the time limit for response and the consequences of a failure to respond), (e)(1) ("delivering a copy of the summons and complaint")).

[101] *United States v. Merlino*, 785 F.3d 79, 86–87 (3d Cir. 2015) (alterations omitted) (citing BLACK'S LAW DICTIONARY 1665 (10th ed.2014) (defining summons as a "writ or process commencing the plaintiff's action and requiring the defendant to appear and answer"); BALLENTINE'S LAW DICTIONARY 1238 (3d ed.1969) (defining summons as "original process upon a proper service of which an action is commenced and the defendant therein named brought within the jurisdiction of the court")).

[102] *Merlino*, 785 F.3d at 86–87.

**2025 VI Super 44U**

¶44    However, Father Connor also provided multiple affidavits in the Quiet Title Action,

including an affidavit presenting facts that counter the process server's affidavit proving service.

This affidavit contains language that factually may constitute an admission to waving service of

process, and the Court will analyze these potential admissions.

## D. **As Admitted in Father Connor's Affidavit, His Response to the Process Server's Actions in the Quiet Title Action Constitute Avoidance/Dodging of Service and are a Waiver of Legal Notice/Service.**

¶45    When the Quiet Title Defendants moved to vacate the Quiet Title Judgment, they submitted

an affidavit of Father Connor.  Conceivably,[103] the facts contained in such an affidavit could

constitute admissions[104] and could, therefore, prove service of process.  Consequently, the Court

will consider whether Father Connor admitted to either receiving or waiving legal notice in his

affidavit in the Quiet Title Action.

¶46    "Proof of the service of the summons and complaint . . . shall [include]:  . . . [t]he written

admission of the defendant.  In the case of service otherwise than by publication, . . . admission

must state the time and place of service . . . ."[105]  Additionally, "a defendant's refusal to accept

service or a defendant's avoidance of service will not defeat personal jurisdiction . . . ."[106]  "It is

settled that 'a face to face encounter and an in hand delivery of the papers is not always essential'

under [the Rules of Civil Procedure].  'If the defendant attempts to evade service or refuses to

accept delivery after being informed by the process server of the nature of the papers, it usually is

---

[103] The Court recognizes that parties do not often admit to matters that would justify a decision adverse to them. However, such eventualities occur with enough frequency that the Court believes it would be remiss in its obligations under Virgin Islands Rule of Civil Procedure 1 if it failed to consider if the opposing affidavit unintentionally proved legal notice by admission.

[104] V.I.R. Evid. 401(d)(2).

[105] 5 V.I.C. § 114(a)(4) and (b).

[106] *Skepple*, 69 V.I. at 731 (citations omitted).

**2025 VI Super 44U**

sufficient for the process server simply to leave them in the defendant's physical proximity,' as

[the requirement of service of process] guards 'the objective of giving notice to the party to be

served.'"[107]

¶47    The Quiet Title Defendants submitted an affidavit stating, *inter alia*, the following:

> On January 23, 2020, I was shopping inside the Home Depot store on St Thomas
> when Mr. Alwyn Carty stopped me in the aisle to speak with me.
>
> . . . .
>
> I photographed [the process server] with my cell phone as [they] hurriedly left the
> aisle and also photographed Carty who stood in the aisle taking pictures of me and
> the papers [the process server] had dropped on the floor near a shopping cart (See
> Exhibit A-1 attached). . . . Almost immediately thereafter, I left the Home Depot
> store as I had completed my shopping and did not retrieve the documents which
> [the process server] had dropped in the aisle of the Home Depot store.[[108]]

The photos of the Quiet Title Plaintiff show Father Connor plainly inside the Home Depot and the

process server walking inside the Home Depot and the summons and complaint to the Quiet Title

Action on the floor of the Home Depot.[109]   Likewise, the photo of Carty (taken by Quiet Title

Defendant Connor) plainly shows him inside the Home Depot.  Father Connor authenticates these

photos in his affidavit, attaching them as exhibits to his affidavit.

¶48    While Defendant-in-Intervention argues that counsel's erroneous recitation of facts in

opposition to the challenge to the validity of service of process in the Quite Title Action somehow

---

[107] *Gambone v. Lite-Rock Drywall Corp.*, 124 Fed. Appx. 78, 79 (3d Cir. 2005) (alterations omitted) (quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1095 (3d ed. 2002); *Modern Elec. Corp. v. Walsh*, 197 F.R.D. 196 (D.D.C. 2000); *Roth v. W.T. Cowan, Inc.*, 97 F. Supp. 675 (E.D.N.Y. 1951))).

[108] Exhibit A to the Quiet Title Defendants' Nov. 5, 2020 reply to the Quiet Title Plaintiff's opposition the motion to vacate the final judgment in the Quiet Title Acton.

[109] The photos discussed above were submitted as Exhibit 5 to the Quiet Title Plaintiff's opposition to the motion to vacate the final judgment in the Quiet Title Action and authenticated by a second affidavit of the process served (Exhibit 4 to that opposition).

**2025 VI Super 44U**

proves service was never accomplished, this is not true.[110] Unsworn statements of counsel are not evidence.[111] The process server's affidavit and Father Connor's affidavit both state the date of the events and that the events in dispute occurred inside the Home Depot (not in the parking lot) on St. Thomas, USVI. The actual witnesses, including Father Connor himself, who were present and have the necessary personal knowledge to make them competent to testify[112] declared under penalty of perjury that the interaction between Father Connor and the process server occurred inside the Home Depot. There is likewise no dispute as to everyone present at the time of the events.

¶49    Indeed, there appears to be no factual dispute **except** as to precisely what occurred when the summons and complaint were to be delivered in-hand to Father Connor, the "hand off," so to speak. Regarding the "hand off," Father Connor declares as follows:

> While Mr. Carty was speaking with me in the aisle, I was approached from behind by an individual, whom I later learned through this case was Mr. Kerry Rhymer. Mr. Rhymer called out "I'm looking for you" and, when I turned in the direction of his voice, he very quickly dropped some papers on the floor of the aisle near a shopping cart and hurriedly left the aisle while screaming 'you've been served!' 'You've been served!'

Father Connor's affidavit presents facts somewhat analogous to various cases cited approvingly by the Virgin Islands Supreme Court in *Skepple* in footnote 27.[113]

---

[110] *Cf. Allahar v. Clinical Lab'y Inc.*, No. CV 2011-001, 2012 WL 833336, at *3 (D.V.I. Mar. 13, 2012) (unpublished) ("The Rule does not contemplate that a party might waive an affirmative defense through an erroneous statement that it had in fact received service in an unrelated filing.").

[111] *Rouse v. People*, 78 V.I. 717, 742 (V.I. 2024) ("Even more to the point, this Court has rejected the rule that an attorney's unsworn representations to the court constitute evidence. *See [Dennery I]*, 55 V.I. 986, 994 (V.I. 2011) ('In-court statements by attorneys acting as advocates are not evidence.').").

[112] V.I.R. EVID. 602.

[113] *Skepple*, 69 V.I. at 734 n.27.

**2025 VI Super 44U**

¶50 There, the Court cited *Travelers Cas. & Sur. Co. of Am. v. Brenneke* and provided the following parenthetical quotation, "sufficient service may be found where there is a good faith effort to comply with the requirements of Rule 4(e)(2) which has resulted in placement of the summons and complaint within the defendant's immediate proximity and further compliance with Rule 4(e)(2) is only prevented by the defendant's knowing and intentional actions to evade service."[114] Likewise, the Court cited *Errion v. Connell* and parenthetically noted that *Errion* found "that service is effective when the server 'pitched the papers through a hole in the screen door of [defendant's] apartment.'"[115] The holdings stand for the rule that, "where the defendant, being aware that civil action [has been] instituted against [them], attempts . . . avoid service of process[,] . . . the defendant, by [their] own action, renders personal service of process impossible. This action constitutes a waiver of notice of the proceedings sought to be avoided. . . . To allow a person to escape [their] civil obligation by purposefully [avoiding service of process] would be to encourage deception."[116]

¶51 Father Connor admits that, on January 23, 2020, 1) he was informed he had been served and 2), even though left immediately in his proximity after being informed "You've been served," he chose to leave those documents behind. Father Connor's further admission that, in response to this, he photographed the witness and process server—thereby creating evidence to later present in court in any attempt to defeat service of process—but studiously avoided looking at the documents placed in his immediate proximity is circumstantial evidence from which it is

---

[114] 551 F.3d 1132, 1136 (9th Cir. 2009).

[115] 236 F.2d 447, 457 (9th Cir. 1956).

[116] *Clark v. LeBlanc*, 593 P.2d 1075, 1076 (N.M. 1979); *e.g., Gambone*, 124 Fed. Appx. at 80 ("'[L]eaving the papers on the doorstep after the door was slammed and **announcing 'you have been served'** was sufficient personal service' when evidence clearly demonstrated that Luongo actually received the papers." (emphasis added) (citation omitted)).

reasonable to infer[117] that Quiet Title Defendants was fully aware that 1) a lawsuit had been filed,

and 2) he was being given formal notice of that lawsuit. Leaving the documents was an attempt

to "avoid service of process," otherwise referred to as "dodging service" or "avoidance of service"

or similar terminology.

¶52    This factual inference[118] is supported by the fact that, on January 23, 2020, the exact same

day Father Connor left the summonses and complaint on the floor of the Home Depot, he

---

[117] *See generally Greer*, 74 V.I. at 576 ("A trier of fact acts rationally if, in light of reason and everyday experience, the evidence, properly presented, rationally and logically supports the existence of the facts [at issue]. A verdict is irrational if there is a lack of connection between the facts offered in evidence and the essential elements of the crime charged. Indeed, when the logical connection between the record evidence and the elements of the crime is so strained as not to have a reasonable and rational relation to everyday experience, common sense, and the circumstances of life as they are in reality, the verdict cannot stand." (citing *Davis v. People*, 69 V.I. 619, 652, 653 n.25 (V.I. 2018) (Swan, J., concurring); *Leary v. United States*, 395 U.S. 6, 33-35 (1969); *Ventura v. People*, 64 V.I. 589, 601 (V.I. 2016); *Tot v. United States*, 319 U.S. 463, 466-68 (1943); *Jackson v. Virginia*, 443 U.S. 307, 317 (1979) ("The *Winship* doctrine [, *see* 397 U.S. 358 (1970),] requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence."); *Jones*, 713 F.3d at 339-40; *Thompson v. Louisville*, 362 U.S. 199, 204 (1960))); *Rouse*, 78 V.I. at 736 ("This Court will affirm such a verdict so long as the evidence, when viewed in the light most favorable to the People — including the benefit of all reasonable inferences — would allow a rational jury to find all elements of each offense proven beyond a reasonable doubt." (citing *Fahie v. People*, 62 V.I. 625, 630 (V.I. 2015))); *Greer*, 74 V.I. at 578 ("'However, a jury's verdict cannot be founded upon suspicion, speculation, conjecture, or any overly attenuated piling of inferences upon inferences.' 'So long as circumstantial evidence allows for a logical and rational inference based on common sense and everyday experience, it will support a finding of guilt beyond a reasonable doubt as to the relevant element of the crime.'" (quoting *Gonsalves v. People*, 70 V.I. 812, 830-31 (V.I. 2019); and citing *Ventura*, 64 V.I. at 601; *Galloway v. People*, 57 V.I. 693, 700 (V.I. 2012); *McIntosh v. People*, 57 V.I. 669, 680 (V.I. 2012)); *Rouse*, 78 V.I. at 746 n.10 (providing the following citation: "*Tot*, 319 U.S. at 467 ('The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference.') (citing *Wilson v. United States*, 162 U.S. 613, 619 (1896))."); *Penn, 67 V.I. at 899 ("In the Superior Court, the proponent of a claim must prove the affirmative of an issue by a preponderance of the evidence. While direct proof of a person's actions is not necessary to prove the affirmative, the fact finder may only infer such from circumstantial evidence when reason and experience support such an inference because there is a rational connection between the facts proved and the facts inferred." (citing 5 V.I.C. § 740(5); *Rennie*, 62 V.I. at 544; *Tot*, 319 U.S. at 466–67); *Rouse*, 78 V.I. at 745–46 ("In order to be properly qualified, the lay witness' opinion must be rationally based on the witness' perception supported by firsthand knowledge of the factual predicates that form the basis for the opinion." *Knight*, 989 F.2d at 629 (citing Fed. R. Evid. 701 (a) (for a lay witness, 'testimony in the form of an opinion is limited to one that is: (a) rationally based on witness' perception').").

[118] It is both rational and logical to conclude that Father Connor was avoiding/dodging service when he left the documents on the floor of the Home Depot when, following this on that very day, he proceeded to the office of the Clerk of the Court and obtained a copy of the Quiet Title Complaint. His actions of going to the Court and obtaining a copy demonstrate that, at the time of service, he knew what was happening and chose to ignore service. Indeed, the Quiet Title Defendants obtained a copy of the complaint before proof of service could even be submitted to the Court. *See generally Codrington v. People*, 57 V.I. 176, 199–200 (V.I. 2012) ("'[R]ecent possession of the fruits of the crime,

**2025 VI Super 44U**

proceeded to the office of the Clerk of the Court and paid to obtain a copy of the complaint—Quiet

Title Plaintiff was not able to file proof of service until January 24, 2020. Considering Quiet Title

Defendant Connor's admitted actions in context, the Quiet Title Defendants' written admissions

establish that they waived service of process in the Quiet Title Action.[119]

---

if not satisfactorily explained, is a circumstance from which the inference may be drawn that the possession is guilty possession.'" (quoting *Gov't of the V.I. v. Blyden*, 626 F.2d 310, 313–14 (3d Cir.1980))); *Thomas v. People*, 69 V.I. 913, 929 (V.I. 2018) ("Evidence that a defendant was in possession of recently stolen property, without a reasonable explanation, gives rise to a permissible inference of guilt." (citing *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983); *Barnes v. United States*, 412 U.S. 837, 839 (1973))); *see also Barnes*, 412 U.S. at 843–46 ("For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods. James Thayer, writing in his Preliminary Treatise on Evidence (1898), cited this inference as the descendant of a presumption 'running through a dozen centuries.' Early American cases consistently upheld instructions permitting conviction upon such an inference, and the courts of appeals on numerous occasions have approved instructions essentially identical to the instruction given in this case. This longstanding and consistent judicial approval of the instruction, reflecting accumulated common experience, provides strong indication that the instruction comports with due process. This impressive historical basis, however, is not in itself sufficient to establish the instruction's constitutionality. Common-law inferences, like their statutory counterparts, must satisfy due process standards considering present-day experience. In the present case the challenged instruction only permitted the inference of guilt from unexplained possession of recently stolen property. The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent with innocence. Based on this evidence alone common sense and experience tell us that petitioner must have known or been aware of the high probability that the checks were stolen. Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process." (quoting James Thayer, Preliminary Treatise on Evidence (1898), at 327; and citing *Turner v. United States*, 396 U.S. 398, 417 (1970); *Leary*, 395 U.S.6, 46 (1969))); *cf. Barnes*, 412 U.S. at 846 n.11 ("In *Tot v. United States*, 319 U.S. 463 (1943), the Court stated that the burden of going forward may not be freely shifted to the defendant. *See also Leary v. United States*, 395 U.S. 6, 44—45 (1969). *Tot* held, however, that where there is a 'rational connection' between the facts proved and the fact presumed or inferred, it is permissible to shift the burden of going forward to the defendant. Where an inference satisfies the reasonable-doubt standard, as in the present case, there will certainly be a rational connection between the fact presumed or inferred (in this case, knowledge) and the facts the Government must prove to shift the burden of going forward (possession of recently stolen property).").

[119] Avoidance of or dodging service, when the summons and complaint have **not been left within the immediate proximity** of the defendant, justifies constructive service of process by publication. "'A person who deliberately conceals himself to evade service of process is scarcely in a position to complain overmuch of unfairness in substitutive methods of notification enacted by the Legislature to cope with such situations. When it satisfactorily appears that a defendant by [their] own design successfully has secreted himself from the process server and thus thwarted personal service, it would indeed be anomalous to heed an assertion that he had been denied notice and an opportunity to be heard.'" *Hayes v. Risk*, 64 Cal. Rptr. 36, 46 (Cal. Ct. App. 1967) (quoting *Miller v. Superior Court*, 16 Cal. Rptr. 36, 40 (Cal. Ct. App. 1961)). Having reviewed the docket in the Quiet Title Action, the plaintiff therein never sought service by publication. Therefore, there are no facts before the Court to which this rule could be applied.

**2025 VI Super 44U**

¶53     However, even if Quiet Title Defendants waived legal notice (and thus waived their objections to the Court's exercise of personal jurisdiction), they argue the Quiet Title Judgment is still void because a second witness (other than the process server whose testimony was discussed above) was not sworn. Therefore, the Court must consider whether the failure to swear a witness results in "[a] judgment [that] is 'so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.' These infirmities are jurisdictional defects or actions that deprive a party of legal notice and an opportunity to be heard, thus depriving the party of due process."[120]

## II.     A Court's Failure to Swear a Witness(es) is a Voidable Error Only Capable of Reversal in a Direct Appeal, and the Quiet Title Judgment is Not Void Due to the Failure to Swear Witnesses.

¶54     An objection to the failure to swear a witness is the sort of objection that cannot be heard after the time for direct appeal has expired—a party waives any objection to the failure to swear a witness if they do not timely appeal, and they are foreclosed from raising that error in a collateral attack.

¶55     To begin, in *Skepple*, the Virgin Islands Supreme Court acknowledged that, in addition to the three main requirements for a valid judgment,[121] certain instances may arise where due process concerns[122] may be so egregiously implicated that a judgment containing the three main attributes

---

[120] *Skepple*, 69 V.I. at 733 (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010); and citing *Roller v. Holly*, 176 U.S. 398, 414 (1900); *Rubin v. Johns*, 109 F.R.D. 174, 178 (D.V.I. App. Div. 1986); *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972); *United States v. Manos*, 56 F.R.D. 655, 659 (S.D. Ohio 1972); *Raymark Indus., Inc. v. Lai*, 973 F.2d 1125, 1132 (3d Cir. 1992))).

[121] *Id.* at 718-21 (subject matter jurisdiction, personal jurisdiction, and relief limited to the issues pled).

[122] *Id.* at 721 ("must have acted in accordance with due process of law"). Given the constitutional requirements of a "Full Hearing," while exceedingly rare, it is conceivable that circumstances may exist under which a default judgment could have been entered under an unique alignment of facts and procedural background that somehow deprived a defendant of an opportunity to be heard or otherwise contains an infirmity so fundamental that an absent defendant's

**2025 VI Super 44U**

of a valid judgment could potentially still contain one of those "fundamental infirmities" that go beyond the statutory (or constitutional) grant of jurisdiction or "that deprive a party of legal notice and an opportunity to be heard."[123] Defendant-in-Intervention appears to believe the failure to swear a witness falls into this fourth category of defects.

¶56     "The phrase 'jurisdictional' refers to 'a court's adjudicatory capacity.'"[124] Moreover, the Virgin Islands Supreme Court has explained that subject matter jurisdictional requirements[125] are

---

right to due process was violated in a way that was not waived and can be attacked outside of a direct appeal (or other procedural device in the case in which the judgment was entered).

[123] *Id.* at 733 ("A judgment is void if it is 'so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.' These infirmities are jurisdictional defects or actions that deprive a party of legal notice and an opportunity to be heard, thus depriving the party of due process. From its inception, a void judgment is a legal nullity and without legal effect, and any defect cannot be cured. The concept of a void judgment is narrowly construed in order to promote finality of judgments, and only a demonstration of a clear usurpation of power will render a judgment void." (quoting *Espinosa*, 559 U.S. at 270; and citing *Roller*, 176 U.S. at 414; *Rubin*, 109 F.R.D. at 178; *Lubben*, 453 F.2d at 649; *United States*, 56 F.R.D. at 659; *Raymark Indus.*, 973 F.2d at 1132)); *see generally Vanterpool*, 63 V.I. at 572 ("We note that [the appellant] frames [their] argument in jurisdictional terms by claiming that the July 12, 2013 opinion constituted a nullity, a characterization typically reserved only for orders entered without jurisdiction." (citing *In re Smith*, 54 V.I. at 531)); *cf. In Smith*, 54 V.I. 517, 530 (V.I. 2010) ("Black's Law Dictionary defines a 'full hearing' as 'a hearing at which the parties are allowed notice of each other's claims and are given ample opportunity to present their positions with evidence and argument.'" (alteration omitted) (quoting BLACK'S L. DICT., at 738; and citing *Schmidtlien Elec., Inc. v. Greathouse*, 104 P.3d 378, 387 (Kan. 2005); *Gourley v. Gourley*, 145 P.3d 1185, 1193 (Wash. 2006)));

[124] *Vanterpool*, 63 V.I. at 572–73 ("Under Virgin Islands law, the judicial power of the Territory is clearly vested in courts, and not to individual judges. Similarly, the statute conferring the Superior Court with original jurisdiction over all civil actions omits any reference to vesting jurisdiction to particular judicial officers." (quoting *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011); and citing 4 V.I.C. § 2 ("The judicial power of the Territory is vested ... in courts of local jurisdiction to be designated the 'Superior Court of the Virgin Islands' and the court of last resort ... 'The Supreme Court of the Virgin Islands.' "); 4 V.I.C. § 76(a) ("[T]he Superior Court shall have original jurisdiction in all civil actions regardless of the amount in controversy....")). *Willis*, 71 V.I. at 815 ("'Jurisdiction' is an expansive legal concept; and the use of the term should be studied carefully to determine which aspect of 'jurisdiction' is being addressed. Perhaps the Supreme Court of the United States said it best when it stated, 'It is as easy to give a general and comprehensive definition of the word jurisdiction as it is difficult to determine, in special cases, the precise conditions on which the right to exercise it depends.' The right of judicial jurisdiction 'has reference to the power of the court over the parties, over the subject matter, over the *res* or property in contest, and to the authority of the court to render the judgment or decree.'" (alterations omitted) (quoting *Cooper*, 77 U.S. (10 Wall.) at 316)).

[125] In contrast, issues relating to personal jurisdiction (*i.e.*, process, service of process, statutory minimum contacts, and constitutional minimum contacts) are personal defenses that, while capable of wavier, must exist before a valid judgment can be entered. *See generally Skepple*, 69 V.I. at 732 ("If the Superior Court is properly presented with a challenge to personal jurisdiction, whether it is a challenge to constitutional minimum contacts, long-arm statute jurisdiction, sufficient process, or sufficient service, the court must hold an evidentiary hearing to resolve any factual dispute between the *prima facie* evidence contained in the affidavit of service and the evidence (*i.e.*, affidavit

2025 VI Super 44U

not subject to waiver or tolling.[126] For example, the parties to a case cannot stipulate to subject

matter jurisdiction[127] because such jurisdiction is the definition of a court's power to act[128] and a

court cannot arrogate to itself power the people through their elected representatives in the

---

presenting facts that, if true, establish service was not properly achieved) as disputed by the party presenting the challenge." (citations omitted)); *Evans-Freke*, 75 V.I. at 447 (Swan, J., concurring) ("There must also be personal jurisdiction over all the parties, which has four components: (1) sufficient process, (2) service of that process, (3) statutory minimum contacts, and (4) constitutional minimum contacts." (citing *Skepple*, 69 V.I. at 722)).

[126] *Allen v. Hovensa, L.L.C.*, 59 V.I. 430, 435–36 (V.I. 2013) ("'The distinction between jurisdictional and claims-processing rules is not merely academic, for a claims-processing statute may be equitably tolled or judicially modified, while failure to comply with a jurisdictional statute can never be excused' and such failure may be invoked at any stage of the proceedings, even by the court *sua sponte*. And 'because claims-processing rules are equivalent to the statute of limitations and other affirmative defenses, litigants who seek to invoke a claims-processing rule to dismiss or limit an appeal must do so at the first opportunity prior to the case becoming fully briefed.'" (quoting *First Am. Dev..*, 55 V.I. at 611; *In Smith*, 54 V.I. at 524 n.5; and citing *Gov't of the V.I. v. Martinez*, 620 F.3d 31, 327–28 (3d Cir. 2010); *Bowles v. Russell*, 551 U.S. 205, 214 (2007)); *Brady v. Cintron*, 55 V.I. 802, 815 (2011) ("As an initial matter we must determine whether the pre-filing requirements of section 166i are jurisdictional requirements or claims-processing rules. This distinction is important because of the contrasting effect that claims-processing rules and jurisdictional requirements have on a court's scope of authority. While claims-processing rules can be equitably tolled or even waived, courts have 'no authority to create equitable exceptions to jurisdictional requirements and litigants cannot by waiver or forfeiture confer jurisdiction where it is otherwise lacking.'" (quoting *Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 524 (D.C. Cir. 2010); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S.154, 1244 (2010); and citing *Pichardo v. Comm'r of Labor*, 49 V.I. 447, 450 (V.I.2008))); *cf. Ottley v. Estate of Bell*, 61 V.I. 480, 496 (V.I. 2014) ("[A]s a claims-processing rule, compliance with section 606 is subject to equitable remedies at the court's discretion. So, for example, while the parties cannot agree to waive any of section 606's requirements, in certain circumstances a court may properly find that an administrator forfeited the right to raise section 606 as a defense due to equitable considerations." (citing, *Mustafa v. Camacho*, 59 V.I. 566, 571 n.2 (V.I. 2013))).

[127] *Willis*, 71 V.I. at 816 ("Because subject matter jurisdiction is a court's power [to act,] parties to litigation may not stipulate to either its presence or absence. More succinctly, when a court lacks subject matter jurisdiction, it lacks the power to act; and no action by the parties can give such power." (citing BLACK'S L. DICT., at 870; *Murphree*, 326 U.S. at 445; *City of New York v. Miln*, 36 U.S. (11 Pet.) 102, 133-34 (1837); *Williams I*, 58 V.I. at 347; *Kempe's Lesee v. Kennedy*, 9 U.S. (5 Cranch) 173, 186 (1809))).

[128] *Willis*, 71 V.I. at 816 (Swan, J., concurring) ("[S]ubject matter jurisdiction is a court's power 'over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of a thing,'" (quoting BLACK'S L. DICT., at 870; and citing *Murphree*, 326 U.S. at 445; *Miln*, 36 U.S. (11 Pet.) at 133-34; *Williams I*, 58 V.I. at 347; *Kempe's Lesee*, 9 U.S. (5 Cranch) at 186); *Skepple*, 69 V.I. 700, 718 ("A valid judgment requires, first, that the court that issued it 'had cognizance of the class of case to which the one adjudged belonged;; it must have subject matter jurisdiction." (alterations omitted) (quoting *Stockton*, 140 U.S.at 268; and citing *Bredin v. Bredin*, 140 F. Supp. 132, 136 (D.V.I. 1956); *Isaac*, 25 V.I. at 39; *Milliken*, 311 U.S. 457))); *Evans-Freke*, 75 V.I. at 446–47 ("[A] court may only act validly within its appointed range of power (whether by constitutional grant, statutory grant, or both); there must be subject matter jurisdiction. This requires that the legal and factual issues fall within the legislation and/or constitutional provision authorizing a court to act. Indeed, subject matter jurisdiction may be challenged by any party at any time in a proceeding exactly because it is the very definition of a court's power to act." (citing *Arredondo*, 31 U.S. (6 Pet.) at 710; *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 126 (1804) ("A plaintiff may assign for error the want of [subject matter] jurisdiction in the court to which he has chosen to resort."); *Skepple*, 69 V.I. at 718)).

**2025 VI Super 44U**

legislature have not chosen to grant. In contrast, requirements in court rules are non-jurisdictional,[129] claims-processing procedures capable of tolling and wavier.[130] The Virgin Islands Supreme Court has declared in Virgin Islands Rule of Evidence 603 that, prior to testifying, a witness must be subjected to the penalty of perjury in a manner "designed to impress that duty on the witness's conscience."[131]

---

[129] *E.g., Bryan v. Gov't of the Virgin Islands,* 56 V.I. 451, 455–56 (2012) ("[T]ime limits established by Rule 5 are claims processing rules. A claims processing rule is a procedural requirement that 'is not jurisdictional and as with other judicially-created doctrines, is subject to waiver.' 'A claims processing rule can be forfeited if the party asserting the rule waits too long to raise the point.'" (alterations omitted) (quoting *Kontrick v. Ryan,* 540 U.S. 443, 456 (2004); *Vazquez,* 54 V.I. at 489 n.1; and citing *Vazquez,* 54 V.I. 485, 489–90; *Crooke,* 54 V.I. at 253–54 ("It is well established that time limits set exclusively by court rules are mere claims-processing rules which do not affect a court's subject matter jurisdiction even if they may result in dismissal if violated."))); *Montgomery v. Virgin Grand Villas St. John Owners' Ass'n,* 71 V.I. 1119, 1129 (2019) ("The time to file a notice of appeal from a final judgment is not a jurisdictional requirement, but rather a claims-processing rule that is subject to waiver. Thus, an appellee may waive a defect in the timeliness of a notice of appeal if it fails to raise the issue at the earliest opportunity." (citing *Vazquez,* 54 V.I. at 489–90; *Crooke,* 54 V.I. at 253–54 ("It is well established that time limits set exclusively by court rules are mere claims-processing rules which do not affect a court's subject matter jurisdiction even if they may result in dismissal if violated."); *Bryan,* 56 V.I. at 456)); *Magras v. People,* 79 V.I. 857, 879 (V.I. 2024) ("[T]he time to file a notice of appeal from a magistrate judge's order is not a jurisdictional requirement, but rather a claims-processing rule that is subject to waiver." (citing *Vazquez,* 54 V.I. at 489-90; *Crooke,* 54 V.I. at 253-54; *Montgomery,* 71 V.I. at 1129; *Bryan,* 56 V.I. at 456)).

[130] *Benjamin,* 56 V.I. at 564–65 ("[S]tanding, like mootness, functions in the courts of the Virgin Islands as a claims processing rule that is subject to waiver should the party asserting the issue fail to raise it in a timely manner." (citing *Vazquez,* 54 V.I. at 489–90; *Farrell v. People,* 54 V.I. 600, 607–08 (V.I.2011) (explaining that appellate jurisdiction of this Court under 4 V.I.C. § 32(a) is not restricted "only to appeals taken by aggrieved parties," and that such a requirement is "essentially a claims processing rule that is 'not jurisdictional [and] is subject to waiver' "))); *Simon v. Joseph,* 59 V.I. 611, 629 (V.I. 2013) ("Since neither this Court nor the Superior Court are Article III courts, 'in the territorial courts, ripeness, like standing, is not jurisdictional.' As a non jurisdictional, judicially-created doctrine, the ripeness doctrine, like other claims-processing rules, is subject to waiver if not timely asserted by the party that benefits from its application. Importantly, it is well-established that courts may invoke claims-processing rules *sua sponte* if the 'rule implicates judicial interests beyond those of the parties.' And it is equally well-established that ensuring comity between courts is a judicial interest sufficiently serious to warrant *sua sponte* invocation of claims-processing rules and other affirmative defenses." (quoting *United States v. Mitchell,* 518 F.3d 740, 750 (10th Cir. 2008); *In the Interest of K.J.F.,* S. Ct. Crim. No. 2013–0024, 2013 WL 3377638, at *4 n.6 (V.I. July 5, 2013) (unpublished); and citing *Benjamin,* 56 V.I. at 565; *Vazquez,* 54 V.I. at 489–90 ; *Long v. Atlantic City Police Dep't,* 670 F.3d 436, 445 n.18 (3d Cir. 2012); *Day v. McDonough,* 547 U.S. 198, 210 (2006); *Clodfetter v. Republic of Sudan,* 720 F.3d 199, 209 (4th Cir. 2013))).

[131] V.I.R. EVID. 603.

**2025 VI Super 44U**

¶57    Defendant-in-Intervention acknowledges that a failure to subject a witness to the penalty

of perjury prior to taking testimony is an error capable of being waived due to failure to object

when it cites *In re G. W.*, a case that summarizes the general legal principles as follows:

> Ordinarily, it is reversible error for a court to refuse to have a witness sworn and
> then rely upon that witness's unsworn testimony in resolving the dispute. But, the
> mere failure to have a witness sworn is error that may be waived, and thus, unsworn
> testimony is competent evidence where the opposing counsel neither requests that
> the witness be sworn nor makes a timely objection to the testimony.[132]

Likewise, the requirement that a witness be subjected to the penalty of perjury is embodied in a

rule of court. Both these points support the conclusion that the failure to subject a witness to the

penalty of perjury prior to taking testimony does not render a judgment void.

¶58    While the analogical distinction between subject matter jurisdiction and subjecting a

witness to the penalty of perjury is not perfect, the fact that failure to subject a witness to the

penalty of perjury is an error subject to waiver is strong evidence that it is an error rendering a

judgment merely voidable, an error that is only capable of reversal on direct appeal. Additionally,

nothing about a failure to subject a witness to the penalty of perjury goes to the subject matter

jurisdiction of a court or deprives a party of legal notice such that they have been deprived an

opportunity to be heard.[133] This conclusion is supported by the rule that "[t]he concept of a void

judgment is narrowly construed in order to promote finality of judgments, and only a

demonstration of a clear usurpation of power will render a judgment void."[134]

---

[132] *In re G.W.*, 2020-Ohio-3355, ¶ 21 (unpublished) (citing *State v. Ballou*, 254 N.E.2d 697 (Ohio Ct. App. 1969); *Arcaro Bros. Builders, Inc. v. Zoning Bd. of Appeals*, 218 N.E.2d 179 (Ohio 1966); *Stores Realty Co. v. City of Cleveland*, 322 N.E.2d 629 (Ohio 1975); *State v. Mason*, No. 8164, 1983 WL 4959 (Ohio Ct. App. Sept. 20, 1983) (unpublished))

[133] *Skepple*, 69 V.I. at 733 (quoting *Espinosa*, 559 U.S. at 270; and citing *Roller*, 176 U.S. at 414; *Rubin*, 109 F.R.D. at 178; *Lubben*, 453 F.2d at 649; *Manos*, 56 F.R.D. at 659; *Raymark Indus.*, 973 F.2d at 1132).

[134] *Id.* at 733 (quoting *Espinosa*, 559 U.S. at 270; and citing *Roller*, 176 U.S. at 414; *Rubin*, 109 F.R.D. 174, 178 (D.V.I. App. Div. 1986); *Lubben*, 453 F.2d at 649; *Manos*, 56 F.R.D. at 659; *Raymark Indus.*, 973 F.2d at 1132)).

**2025 VI Super 44U**

¶59 The cases relied upon by Defendant-in-Intervention support this conclusion and establish that the failure to swear a witness is a merely voidable mistake that can only be challenged on direct appeal, not a mistake rendering a judgment void and capable of collateral attack. The Court will consider in turn each authority relied upon by Defendant-in-Intervention.

¶60 *In re Holly* was a direct appeal from a guardianship proceeding.[135] The putative ward had requested their own guardianship counsel who had appeared in court and attempted to offer evidence; the court refused the request. On appeal, the court provided the following analysis:

> we must first address Appellees' assumption that the hearing on [the ward's] nomination of attorneys was an evidentiary hearing. *It was not.* Despite repeated requests by the Nominated Attorneys, the trial court refused to allow them to present any evidence in support of [the ward's] application to nominate them as [their] attorneys. Unsworn, in-court statements by attorneys acting as advocates are not evidence. The trial judge's declaration that 'I see no reason to swear in all of the attorneys. You are all officers of the Court,' does not transform the arguments of attorneys into testimony.[136]

¶61 In *Scott v State*, a criminal defendant had sought return of property taken and used as evidence.[137] Following a hearing on the motion, the defendant appealed. The court provided this history:

> At the hearing, [the defendant] testified about his arrest. [They were] told that the paramedics took [their] personal property and gave it to the PBPD. [The defendant] alleged the jewelry was [their] personal property, was not the fruit of any criminal activity, was not used as evidence in any case against [them], and was taken while [they were] laying on the ground before going to the hospital. The attorney for the State said that [their] secretary was told by the PBPD evidence section that they did not have the property or a receipt for it. The court stated: "I just don't know a way to make Palm Bay give something back that they say they don't have. There may be some civil remedies that you can pursue. But at this point I don't see any remedy

---

[135] *In re Holly*, 164 P.3d 137, 143 (Okla. 2007).
[136] *Id.* at 143 (emphasis in original) (quoting *Norman v. Trison Dev. Corp.*, 832 P.2d 6, 11 n.26 (Okl. 1992); *State v. Torres*, 87 P.3d 572, 582, 585 (Okl. 2004)).
[137] 922 So. 2d 1024, 1027 (Fla Dist Ct App 2006).

**2025 VI Super 44U**

that I can pursue." The court entered minutes indicating that there was 'no action taken.'[138]

The court explained:

> The requirement for an evidentiary hearing was not satisfied by the court's reliance on state attorneys' statements that law enforcement did not have [the defendant's] property; it is well-settled that 'representations by an attorney for one of the parties regarding the facts does not constitute evidence.' The trial court may not merely rely on the [hearsay recitation by counsel of the] State's unproven assertions that people had unsuccessfully looked for [the defendant's] property.[139]

¶62    *Banda v. Garcia* was also a direct appeal, at the trial level,

> [a]t the hearing, [defense counsel] asserted that an oral agreement to extend the settlement deadline existed and that [plaintiff's counsel] had reneged on it. [Plaintiff's counsel] denied that any oral agreement did in fact exist. ... Normally, an attorney's statements must be under oath to be considered evidence. [H]owever, the opponent of the testimony can waive the oath requirement by failing to object when the opponent knows or should know that an objection is necessary.
>
>                                     . . . .
>
> [Plaintiff s]till did not, at any time, object to the trial court's failure to administer the oath. Therefore, [plaintiff] waived any objection he had and [defense counsel's] statements to the court are some evidence of the settlement agreement. Accordingly, the court of appeals should have affirmed the trial court's judgment enforcing the agreement.[140]

¶63    In *Lindon v. Honsberger*, a direct appeal, the

> [biological parent] depicted the [de facto parents who had cared for the child for years] as manipulative *de facto* custodians who seek only revenge, accusing them of subjecting Child to invasive procedures and an investigation by social services to avoid the circuit court's previous order. Although the circuit court cited 'evidence' during this proceeding, no witnesses were sworn and no evidence was

---

[138] *Id.* at 1025.

[139] *Id.* at 1027 (alterations omitted) (quoting *Eight Hundred, Inc. v. Fla. Dep't of Revenue,* 837 So. 2d 574, 576 (Fla. 1st DCA 2003).

[140] *Banda v. Garcia,* 955 S.W.2d 270, 271-72 (Tex. 1997) (citing *United States v. Marks,* 949 S.W.2d 320, 326 (Tex. 1997); *Burrhus v. M & S Supply, Inc.,* 933 S.W.2d 635, 641 n. 4 (Tex. Ct. App. 1996); *Bloom v. Bloom,* 767 S.W.2d 463, 471 (Tex. Ct. App, 1989); *Beck v. State,* 719 S.W.2d 205, 213 (Tex. Crim. App. 1986); *Fullenwider v. American Guar. & Liab. Ins. Co.,* 821 S.W.2d 658, 662 (Tex. Ct. App. 1991)).

entered. Clearly, the decision of the circuit court was based on unsworn statements by [the biological parent's] counsel, without an evidentiary hearing at which the medical evidence and witnesses mentioned by [the biological parent's] counsel supporting or refuting these allegations could be properly examined.

. . . .

Therefore, the circuit court abused its discretion by relying on unsworn testimony and evidence in making its ruling.[141]

¶64   *Wilson v. Barrientos* was a direct appeal from a preliminary hearing regarding a matter involving prisoner litigation in which the rules of evidence had been disregarded ("documents were used by witnesses without adequate identification and authentication"), cross-examination denied, and witnesses not sworn.[142] The *Wilson v. Barrientos* court explained as follows:

In the cases at bar the magistrate judge erred in [their] effort to accomplish expedient fact-finding by reviewing unauthenticated records and accepting unsworn testimony.

*Spears, Cay, Green,* and their progeny establish the framework for determining the applicability of the § 1915(d) frivolous standard. The trial judge inquiring into the propriety of IFP status must ascertain what the plaintiff is claiming and may make limited assessments of the plaintiff's credibility. In doing so, the judge must take care that the evidence considered is authentic and reliable. Witnesses should be sworn; appropriate cross-examination should be allowed; and documents should be properly identified and authenticated. In short, a *Spears* hearing may be abbreviated, but the evidence adduced must meet adequate indicia of reliability.

In the cases at bar the witnesses were not sworn, no cross-examination was permitted, and documents were used by witnesses without adequate identification and authentication. The evidence adduced did not meet adequate indicia of reliability and the judgments resulting therefrom must be vacated.[143]

---

[141] *Lindon v. Honsberger*, No. 2018-CA-000903-ME, 2019 WL 495985, at *10-11 (Ky. Ct. App. Feb. 8, 2019).
[142] *Wilson v. Barrientos*, 926 F.2d 480, 483 (5th Cir. 1991), on reh'g (Apr. 10, 1991).
[143] *Id.* at 483.

2025 VI Super 44U

The lack of authentication and identification of exhibits and the denial of cross-examination are egregious errors that warranted reversal in a direct appeal regardless of the failure to swear a witness.[144]

¶65 None of the foregoing cases involved a court declaring a judgment void in a collateral attack. All are procedurally the same, a direct appeal challenging the failure to swear a witness. Even *Moore v. Santee*, a case that arguably lends the strongest support to the argument of Defendant-in-Intervention, stands for the same legal principle. In *Moore v. Santee*, a direct appeal of a small claims judgment entered after a small claims trial, the court explained:

> Both the Ohio Rules of Evidence and the Revised Code require that witnesses be sworn before testifying. . . . [A]n oath or affirmation is a prerequisite to the testimony of a witness and that it is error for a court to rely on unsworn testimony in reaching its decision. Furthermore, all proceedings in the small claims division of a municipal court are subject to the procedure established for the trial of actions in municipal courts, which includes the requirement that all witnesses be sworn or take an oath or affirmation before they testify. The record does not reflect that either of the witnesses at the April 3, 1995 hearing were administered an oath or affirmation before testifying. At no time did appellant object to the trial court's failure to administer said oath or affirmation.[[145]]

The court explained, "the trial court's failure **in the instant case** to administer oaths or affirmations to the witnesses at the April 3, 1995 hearing constitutes plain error."[146] The holding was limited to the facts and procedural posture before it, as indicated by the limitation "in the instant case." Given it was an informal small claims proceeding and most courts apply the principle that it is

---

[144] V.I.R. EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); 901(b)(1) (Testimony from a competent witness "that an item is what it is claimed to be" is sufficient to prove a given matter.); 901(a) ("The proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

[145] *Moore v. Santee*, No. 1995 CA 00184, 1996 WL 74022, at *1 (Ohio Ct. App. Feb. 5, 1996) (unpublished) (citing Ohio Evid. R. 603; Ohio R.C. 2317.30; *Allstate Ins. Co. v. Rule*, 64 Ohio St.2d 67 (Ohio 1980); *Cleveland v. Cuyahoga Metropolitan Housing Authority* (Jan. 24, 1991), Cuyahoga App. No. 57954, unreported); *Crumley v. Murphy* (1980), 68 Ohio App.2d 145 (Ohio 1980)).

[146] *Id.* at *2 (emphasis added).

**2025 VI Super 44U**

error for a court to disregard its own rules,[147] the court of appeals likely viewed it as sounder

judicial policy to not apply wavier doctrine to an informal proceeding involving *pro se* parties.

Unfortunately, the *Moore v. Santee* court offers no explanation for its refusal to apply waiver and

leaves it to the reader to draw any such rationale based on the procedural posture and factual

background.

¶66     Without question, in the Virgin Islands, the informal nature of the proceeding and lack of

sophistication of small claims parties, who must proceed *pro se*,[148] would justify the Court creating

an exception to the general rule of waiver such that, in a "Small Claims Proceeding" with such

limitations, it is reasonable to expect this Court to studiously apply its own rules and for the parties

to rely on the Court to apply the material rules,[149] thus making such an error plain error.[150] This

rationale for creating a small claims exception to the general doctrine of wavier of an objection to

the failure to subject a witness to the penalty of perjury[151] does not withstand scrutiny in a general

---

[147] *Dennery II*, 2013 WL 206128, at *2.

[148] *See generally St. Thomas Cargo & Ship Servs., Inc. v. Braga*, 2025 VI SUPER 40, ¶¶ 13-50 (analyzing the substantive and procedural regime applicable to small claims proceedings).

[149] *See Dennery II*, 2013 WL 206128, at *2.

[150] The *Moore v. Santee* court classified the error as a plain error under the applicable rules. The Virgin Islands Supreme Court has explained the three-factor test to determine if "Plain Error" exists and further explained that, even where there is Plain Error, a court must engage in "Plain Error Review" and determine if it should exercise its discretion and notice the error because it affects a substantial right. *See generally Cornelius v. Bank of Nova Scotia*, 67 V.I. 806, 817 n.2 (V.I. 2017) ("'Plain Error' . . . refer[s] to the presence of the first three factors of this test and . . . the term "Plain Error Review" . . . refer[s] to the analysis that is conducted when considering whether the fourth factor—whether the asserted error seriously affected either the fairness, integrity, or public reputation of the judicial proceeding—exists warranting reversal." (citing *Francis*, 52 V.I. at 390-91)); *see also id.* at 816-17 ("A finding of Plain Error requires the existence of (1) an error, (2) that was obvious under existing law, and (3) affected substantial rights. . . . When Plain Error exists, this Court will conduct a Plain Error Review to determine if the error, though affecting a substantial right, seriously affected 'fairness, integrity, or public reputation of the judicial proceeding,' thus warranting reversal." (quoting *Francis v. People*, 52 V.I. 381, 390-91 (V.I. 2009); and citing *Duggins v. People*, 56 V.I. 295, 300 (V.I. 2012); *Dupigny v. Tyson*, 2017 WL 729442, at *9 (V.I. 2017))).

[151] *See generally, e.g., World Fresh Markets*, 71 V.I. at 1171-73 (arguments not timely raised are waived); *Skepple*, 69 V.I. at 744-46 (substantively participating without presenting objection waives legal arguments); *Evans-Freke*, 75 V.I. at 465-80 (Swan, J., concurring) (substantive participation can waive even a previously preserved defense).

**2025 VI Super 44U**

jurisdiction civil proceeding where there are post-trial remedies available and all parties were, in actual fact, represented by counsel.

¶67    *Dennery I* is not to the contrary. In that case, plaintiff's counsel had orally represented to the trial court that the defendant had received legal notice of a Forceable Entry and Detainer trial; but plaintiff's counsel had not made those factual representations while subject to the penalty of perjury. The defendant did not appear for the trial and appealed the judgment of eviction entered in her absence. The Virgin Islands Supreme Court reversed because it found that the unsworn oral representations of counsel are not adequate evidence to *prima facie* prove legal notice.[152] *Dennery I* was merely a prior application of the principles affirmed in *Skepple*, which held that, in the absence of proof of legal notice, a judgment is void.[153]

---

[152] *Dennery I*, 55 V.I. at 993; *cf. Skepple*, 69 V.I. at 730 ("An affidavit is competent evidence to establish service, *i.e.*, legal notice, and the filing of an affidavit asserting facts establishing compliance with the relevant rule of service is *prima facie* evidence giving rise to a rebuttable presumption of valid service providing legal notice." (citing 5 V.I.C. §§ 114(a)(2), 696(a)(1), 4911(b); *Molloy*, 56 V.I. at 172-73; *Bonanno*, 2013 WL 3958772, at *6; *Gore*, 50 V.I. at 236; *Spencer*, 2009 WL 1078144, at *3)).

[153] *Skepple*, 69 V.I. 700, 743 ("In light of the record evidence, which fails to provide *prima facie* evidence of personal service, personal service was not a basis upon which the Superior Court could have obtained personal jurisdiction over [defendant]. . . . Upon the facts presented in the record of this case, the statutory prerequisites for an order approving service by publication pursuant to section 112 of title 5 were not met; and no other form of service was achieved. Consequently, the conclusion that the default judgment is 'one that was rendered by a court lacking jurisdiction over the default' and is, therefore, void is inescapable. The trial court's failure to vacate the void default judgment was an abuse of discretion." (alterations omitted) (quoting *Yale v. Nat'l Indem. Co.*, 602 F.2d 642, 644 (4th Cir. 1979))). Had the plaintiff in *Dennery I* submitted an affidavit that *prima facie* established legal notice, the representations of plaintiff's counsel would have been immaterial. *See* V.I.R. CIV. P. 4(l)(3) ("Failure to prove service does not affect the validity of service."); *Skepple*, 69 V.I. at 731–32 ("A prior unsuccessful attempt at service does not invalidate a subsequent successful service—and *vice versa*—and the successful service is adequate to obtain personal jurisdiction." (citing *Bonanno*, 2013 WL 3958772, at *7)); *Daley-Jeffers v. Graham*, 69 V.I. 931, 940–41 (2018) ("Finally, this Court holds that the Superior Court's dismissal of [the plaintiff's] claim for insufficient service of process amounted to an abuse of discretion. [The plaintiff's] motion and exhibits filed in response to [the defendant's] motion to dismiss for insufficient service of process clearly evidenced that [the plaintiff had] timely remedied her initially deficient service. The failure to provide such proof to the Court previously was a failure of proof of service."). Cases can only stand for principles of law that are supported by the facts and issues presented and decided therein. *Mosler v. Gerace*, 78 V.I. 649, 666 (V.I. 2024) ("[W]e cannot say that this fleeting reference, unaccompanied by any substantive analysis, constitutes a definitive determination by this Court that these terms may be used interchangeably." (citing and quoting parenthetically *In re Moorhead*, 2022 VI 20, ¶ 17 n.1 ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions." (quoting *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985)))); *e.g., Littoral Woodland*, 2025 VI SUPER 13, ¶ 72 ("While any decision of another judge of this

**2025 VI Super 44U**

¶68     That this was the holding in *Dennery I* was also confirmed by the Virgin Islands Supreme

Court in *Skepple* where the Court stated, "We review the facts as presented in the record and

determine whether there has been a *prima facie* showing of compliance with the requirements of

the method of service. *Henry v. Dennery*, 55 V.I. 986, 993 (V.I. 2011)."[154]  The Court cited

*Dennery I* as direct authority for conducting a facial review of the court records (*i.e.*, court

transcripts) to determine if service had been proved.

¶69     The failure to subject a witness to the penalty of perjury is not an error that renders a

judgment void, and the Quiet Title Defendants waived any objection to this failure when they did

not file a timely appeal in the Quiet Title Action.  The authorities relied upon by the Defendant-

in-Intervention do not stand for a different proposition.  The Quiet Title Judgment being valid, the

Court will consider whether there is a basis for reconsidering the order allowing intervention.

**III.     Because the Quiet Title Judgment is Not Void and has Not Been Reversed on Appeal, Defendant-in-Intervention has no Ownership Interest in the Parcel that is Subject to the Dispute in this Case; Intervention is Founded Upon Erroneous Facts and Must be Vacated.**

¶70     Because the Quiet Title Defendants have not established that the judgment was void and

have not appealed within 30 days of their motion to vacate the Quiet Title Judgment being denied

---

Court is entitled to great respect, *Cowgirl Bebop* never considered the plain language of section 914 of title 12 of the Virgin Islands Code, which explains which sub-parts of section 910 are "paragraphs," as opposed to "subsections.""). *Dennery I* does not stand for the broad proposition that unsworn testimony renders a judgment void. Rather, *Dennery I* is direct authority for the principle that the unsworn oral representations of counsel are not *prima facie* evidence of legal notice; and a judgment entered without legal notice to the defendant is void. *Compare Dennery I*, 55 V.I. at *5 ("The only proof that [the defendant] received actual notice of the trial came from the unsworn representation of [the plaintiff's] attorney, and unsworn representations of an attorney are not evidence." (citing *In re Holly*, 164 P.3d at 143; *Scott*, 922 So.2d at 1027; *Banda*, 955 S.W.2d at 272)); *with Skepple*, 69 V.I. at 733 ("We review the facts as presented in the record and determine whether there has been a *prima facie* showing of compliance with the requirements of the method of service." (citing *Dennery I*, 55 V.I. at 993; *McDonough*, 204 U.S. at 15-16; *Spratley*, 172 U.S. at 615-16)).

[154] 69 V.I. at 732–33 (citing *McDonough*, 204 U.S. at 15-16; *Spratley*, 172 U.S. at 615-16).

**2025 VI Super 44U**

by operation of Virgin Islands Rule of Appellate Procedure 5(a)(4), the Quiet Title Judgment remains in effect.[155] Therefore, the determination that Defendant-in-Intervention does not own and has no interest in the property that is the subject of the present dispute (over whether "work commenced" under the CZM permit within the time prescribed) remains in effect. Defendant-in-Intervention is not in privity with the Quiet Title Plaintiff and has neither authority to represent the Quiet Title Plaintiff nor an interest in the real property of the Quiet Title Plaintiff and, therefore, lacks sufficient interest[156] to justify its intervention in this Case.

¶71    The Virgin Islands Supreme Court has said that a party must "Fairly Present" an issue in order to preserve any claim of error for appeal. In order to Fairly Present an issue, "'a party only needs to raise an issue in time for the Superior Court to address it and take whatever action is necessary in the first instance in order to fairly present the issue and preserve it for appeal.'"[157] In practical operation,

> this standard is not some formalistic requirement whereby an issue is fairly presented simply by raising it any time prior to entry of final judgment; and an issue must be presented in such a manner as to give the trial court the opportunity to consider, review, and address the argument in order to ensure that an adequate

---

[155] Any error that does not render a judgment void merely makes that judgment voidable. Voidable judgments are only reversed through the ordinary course of appeal. *See generally cf., e.g., RJ. Reynolds*, 76 V.I. at 678–79 ("Reynolds raised these issues before the trial court in post-trial motions to alter or amend the judgments and for a new trial. The Superior Court never ruled on these motions within 120 days, and they were therefore deemed denied by operation of Rule 5(a)(4) of the Virgin Islands Rules of Appellate Procedure. That the defendants' motions were deemed denied instead of being ruled on, has no bearing on Reynolds' claim that the damages are excessive or that a new trial is warranted. . . . [T]he trial court was aware of the motion yet chose to exercise its discretion to deny it[; we] apply the traditional abuse of discretion standard of review based on the assumption that the trial court rejected all the arguments in the motion." (citing *Atlantic Human*, 76 V.I. at 608; *Moore*, 309 P.3d at 1246-47; *Bridgewater Quality Meats*, 729 N.W.2d at 392; *Shepard's Es.*, 34 Cal. Rptr. at 215-16)).

[156] *See generally FirstBank Puerto Rico v. Harthman Leasing III, LLLP*, 2025 VI 18, ¶ 34 ("Generally, a stranger to a contract lacks standing to enforce compliance with the Statute of Frauds." (alterations and internal quotation's and citations omitted)).

[157] *Ubiles v. People*, 66 V.I. 572, 583 (V.I. 2017) (alterations omitted) (quoting *Percival*, 62 V.I. at 486; citing *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Gov't of the V.I. v. Joseph*, 964 F.2d 1380, 1384 (3d Cir. 1992)).

**2025 VI Super 44U**

record of both law and fact is established so that an appellate court may make an informed decision.[158]

As already noted above, when it cites *In re G.W.*,[159] Defendant-in-Intervention acknowledges that a failure to subject a witness to the penalty of perjury prior to taking testimony is an error capable of being waived due to failure to object. Defendant-in-Intervention seeks to avoid the consequences of wavier by asserting that it was not present at the default judgment hearing. However, "waiver of [an objection] could be effectuated by innumerably varying facts [and] may be express or implied through words or conduct and can result from the acts of both the person or [their] agent."[160]

¶72 The Virgin Islands Rules of Civil Procedure allow a party to seek relief from a Final Judgment.[161] If a party files a motion[162] and timely seeks such relief in the trial court, any such motion is deemed denied if not ruled upon within 120 days of its filing,[163] at which time the 30-day time limit for filing an appeal begins to run.[164] "Although the timing provisions for filing with th[e Virgin Islands Supreme] Court in Rule 5 [of the Virgin Islands Rules of Appellate Procedure]

---

[158] *Ubiles*, 66 V.I. at 584 (citing *Simpson v. Golden*, 56 V.I. 272, 280–81 (V.I. 2012); *United States v. O'Neill*, 116 F.3d 245, 247 (7th Cir. 1997); *United States v. Jake*, 281 F.3d 123, 130 (3d Cir. 2002)).

[159] 2020-Ohio-3355, ¶ 21.

[160] *Skepple*, 69 V.I. at 745.

[161] *E.g.*, V.I.R. Civ. P. 58(b) (must be filed within 28 days of entry of judgment); 60(e)(1) (depending on the basis of the motion, within 1 year of entry of judgment, or longer when other grounds are presented).

[162] V.I.R. Civ. P. 6-1(a)(1) (All relief must be requested by motion; and "all motions must . . . be in writing," "unless made during a hearing or trial.").

[163] *See generally* V.I. E-FILING R. 5(d) ); *see also* V.I. E-FILING R. 5(c).

[164] V.I.R. APP. P. 5(a)(4) ("If a party timely files in the Superior Court a motion for judgement as a matter of law; to amend findings or make additional findings; for a new trial; to alter or amend the judgment or order; or (if filed within 28 days [in accordance with V.I.R. CIV. P. 59(b)]) for relief from the judgment or order, the time for filing the notice of appeal for all parties is extended until 30 day safter the entry of an order disposing of the last such motion; provided, however, that the failure to dispose of any motion by order entered upon the record within 120 days after the date the motion was filed shall constitute a denial of the motion for purposes of appeal."); *cf.* V.I.R. CIV. P. 59(a)(1)(a)(i)-(vi) (if filed within 28 days of entry of final judgment); 60(a)(1)-(3) (if motion filed within a year of entry of judgment); 60(a)(4)-(6).

**2025 VI Super 44U**

are non-jurisdictional, Rule 5(a)(4)'s 120–day provision denying the motion for purposes of appeal[, when it becomes operative,] divest[s] the Superior Court of jurisdiction to rule on the post-trial motion once the 120 days expired. As a result, the Superior Cour[t does] not have jurisdiction to rule after the 120–day tolling period ha[s] passed."[165] Moreover, "[t]he untimely filing of such motions shall not affect the time for appeal . . . ."[166]

¶73    The Quiet Title Judgment was entered August 27, 2020, quieting title to the parcel upon which the construction in this Case was to occur. On September 17, 2020, the Quiet Title Defendants, asserting the judgment was void, timely[167] moved to vacate the Quiet Title Judgment. On Friday, January 15, 2021, the 120-day tolling period contained in Virgin Islands Rule of Appellate Procedure 5(a)(4) had passed. Thirty days from that date was Sunday, February 14, 2021, making the deadline to appeal the denial of the motion to vacate the Quiet Title Judgment (denied by operation of V.I.R. App. P. 5(a)(4)) Monday, February 15, 2021.[168] The Quiet Title Defendants' recent filing of a motion to continue a post-trial evidentiary hearing does not extend this deadline.[169]

---

[165] *Companion Assurance Co. v. Smith*, 66 V.I. 562, 570 (V.I. 2017) (citing *Ex parte Caterpillar Inc.*, 708 So. 2d 142, 143 (Ala. 1997); *Freiberg v. City of Mission Viejo*, 39 Cal. Rptr. 2d 802, 805 (Cal. Ct. App. 1995); *Barker Phillips, Inc. v. Caviness*, 603 S.W.2d 715, 715 (Mo. Ct. App. 1980); *Commonwealth v. Santone*, 757 A.2d 963, 966 (Pa. Super. Ct. 2000)); V.I.R. App. P. 5(a0(5) ("The Superior Court shall, if a notice of appeal ahs been filed, have no authority to grant motions specified in Rule 5(a0(4) that have either been untimely filed or have been deemed denied due to the expiration of the 120-day period provided . . . .").

[166] V.I.R. App. P. 5(a)(5).

[167] The 28-day limit in Rule 59(b) and the 1-year limit in Rule 60(c)(1) do not apply to an argument that a judgment is void. V.I.R. CIV. P. 60

[168] The Quiet Title Defendants have not sought relief pursuant to Virgin Islands Rule of Appellate Procedure 5(a)(8) ("The Superior Court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 5(a) . . . ."). However, such motion must be "filed not later than 30 days after the expiration of the time prescribed by this Rule 5(a)(4) [for filing a notice of appeal]." V.I.R. App. P. 5(a)(8). That time has expired.

[169] V.I.R. App. P. 5(a)(5) ("The untimely filing of such motions shall not affect the time for appeal . . . .").

¶74    The Quiet Title Defendants are entitled to pursue all procedural avenues of relief available. However, even though a motion to file an untimely appeal should be filed in the Superior Court,[170] it is error for one Superior Court Judge to sit in and decide cases to which they are not assigned.[171] Likewise, this Court understands that "the Supreme Court may, *sua sponte* or on motion, take any appropriate action, including, but not limited to, making the excusable neglect or good cause determination or ruling on the motion in the first instance . . . ."[172]  Yet, Quiet Title Defendants have not filed a notice of appeal of the Quiet Title Action; it is axiomatic that the Supreme Court cannot grant permission to take an untimely appeal when no such attempt has been initiated.

¶75    The Court has already concluded that the Quiet Title Defendants had legal notice and that the failure to swear a witness does not render a judgment void. The Quiet Title Defendants could seek relief from the Quiet Title Judgment through an appeal from the denial (by operation of V.I.R. App. P. 5(a)(4)) of their motion for relief from judgment.  Having failed to timely appeal, Quiet Title Defendants have waived their objections to the failure to swear the witnesses at the default judgment hearing in the Quiet Title Action because the failure to swear a witness, an error that is waived if not timely objected to (as held by the court in *In re G.W*),[173] is not one of those "fundamental infirmities" that go beyond the statutory (or constitutional) grant of jurisdiction or "that deprive a party of legal notice and an opportunity to be heard."[174]

---

[170] V.I.R. App. P. 5(a)(8).

[171] *Vanterpool*, 63 V.I. at 574.

[172] V.I.R. App. P. 5(a)(8).

[173] 2020-Ohio-3355.

[174] *Skepple*, 69 V.I. at 733 (quoting *Espinosa*, 559 U.S. at 270; and citing *Roller*, 176 U.S. at 414; *Rubin*, 109 F.R.D. at 178; *Lubben*, 453 F.2d at 649; *Manos*, 56 F.R.D. at 659; *Raymark Indus.*, 973 F.2d at 1132).

**2025 VI Super 44U**

¶76    Rather, the Quiet Title Judgment was "a . . . judgment . . . that erroneously decided a point

of law [and was] subject only to direct attack and is [a judgment] described as being 'voidable.'"[175]

By failing to timely appeal, Quiet Title Defendants waived any claim of error.[176]  The judgement

in the Quiet Title Action remains a Final Judgment that is not facially void.

¶77    This Judge lacks the authority to decide motions pending in cases assigned to other Judges

of this Court, and this Court is not the appellate court to whom the Quiet Title Judgment must be

appealed.  The Quiet Title Judgment is not facially void; and in the absence of a valid judgment

reversing the Quiet Title Judgment, the Quiet Title Judgment remains a valid, final, and

---

[175] *Skepple*, 69 V.I. at 733 (citing *Davis v. Allied Mortgage Capital Corp.*, 53 V.I. 490, 502 (V.I. 2010)).

[176] *See, e.g., Ranger Am. of the Virgin Islands, Inc. v. Pedro*, 2025 VI 20, ¶ 20 ("[W]e note that the deadline for [appellee] to have filed a notice of appeal from the Superior Court's January 23, 2025 order [granting appellant's an extension of time to file a late appeal] in this case had already expired by the time [they] filed [an] appellee's brief on May 22, 2025[; therefore, the appellee's brief could not substantively be treated as a notice of appeal].  We thus conclude that [appellee's] argument—that this appeal should be dismissed as untimely because no good cause existed to warrant an extension for [appellant] to file its notice of appeal—is deemed waived." (citing *Williams II*, 2024 VI 27, ¶25; *Ubiles*, 66 V.I. at 583; *People v. Ward*, 55 V.I. 829, 842 (V.I. 2011))).

At oral argument, counsel for Defendant-in-Intervention said that they had not yet filed an appeal because they were awaiting ruling and such long delays awaiting decision was common.  However, such argument has been rejected by the Virgin Islands Supreme Court.  *Cf. Companion Assurance*, 66 V.I. at 570-71 ("Here, the Superior Court entered its final judgment on the jury verdict on January 11, 2016, and on February 8, 2016, Companion and Fournier filed their motions for new trial and judgment as a matter of law.  Pursuant to Rule 5(a)(4), the commencement of the time to file their notice of appeal was tolled to the date of a decision on the motions or 120 days, which ever period was shorter.  Thus, the time to file the notice of appeal was tolled, until June 7, 2016, if the Superior Court failed to rule on those motions.  Thereafter, Companion and Fournier had an additional 30 days (until July 7, 2016) to file their notice of appeal, V.I. R. App. P. 5(a)(4), or an additional 30 days (until August 8, 2016)³ beyond that upon a showing of excusable neglect. V.I. R. App. P. 5(a)(8), 16(b).  However, Companion and Fournier waited until October 3, 2016, 118 days after the date their post-trial motions were deemed denied for purposes of appeal, and 56 days beyond the period by which a showing of excusable neglect for good cause could have extended the deadline in accordance with Rule 5(a)(8).  Although [appellants] contend that they **were awaiting the Superior Court ruling, we decline to permit** such **blatant disregard of this Court's rules** because 'relaxing the requirements under normal circumstances would severely undermine and weaken the rule's purpose, and diminish society's legitimate interest in the finality of a judgment that has been perfected by the expiration of the time allowed for direct review.'  We accordingly dismiss this appeal as untimely." (alterations omitted) (emphasis added) (quoting *Peters v. People*, 60 V.I. 479, 484 V.I. 2014); and citing *Paxton Resources, LLC v. Brannaman*, 95 P.3d 796 801-02 (Wy. 2004); *Bombardier Capital, Inc. v. Williams*, 850 So. 2d 363, 364 (Ala. Civ. App. 2002); *Santone*, 757 A.2d at 966; *Freiberg*, 39 Cal. Rptr. 2d at 805-06; *Caviness*, 603 S.W.2d at 715; *Minor v. Leisure Lodge, Inc.*, 961 P.2d 915, 916-17 (Or. Ct. App. 1998))).

enforceable judgment of this Court. Whatever may occur subsequent to this order is nothing more than idle speculation,[177] and the Court is obligated to enforce a valid order of this Court.

## CONCLUSION

¶78　Because 1) the Quiet Title Plaintiffs *prima facie* proved legal notice to the Quiet Title Defendants and 2) the Quiet Title Defendants admitted to receiving legal notice, the Quiet Title Judgment is not void for lack of legal notice. The failure to swear a witness is merely an error rendering a judgment voidable, and this error was waived by the Quiet Title Defendants when they did not pursue a timely appeal from the denial of the motion for relief from the Quiet Title Judgment. Having determined that the Quiet Title Judgment is valid, the Defendant-in-Intervention has no interest in the land that is the subject of this matter rendering the prior order granting intervention factually unsupported. Because erroneous factual findings are one of the bases for reversal of an interlocutory order, the Court will grant Plaintiff's motion and vacate the order granting intervention; and any pending filing of Defendant-in-Intervention are struck from the docket. The Government is ordered to file a renewed motion for summary judgment within 20 days of entry of this order. Finally, having determined that intervention was wrongly granted and having vacated that order, the motion to disqualify counsel for Defendant-in-Intervention is denied as moot.[178]

　　Accordingly, it is hereby

---

[177] The Court wishes to emphasize the exceedingly narrow nature of this holding. There exists more than one procedural path to challenge the Quiet Title Judgment in the future. Had any one or more of them been pursued prior to this order, future eventualities would likely have become far more certain (and, in inverse proportion, less speculative), perhaps warranting a different outcome. However, courts can only base decisions upon what is before them.

[178] Nothing in this order should be understood as deciding any matter within the jurisdiction of the Office of Disciplinary Counsel.

**2025 VI Super 44U**

**ORDERED** that Plaintiffs' motion to vacate the Order entered November 10, 2010, granting intervention is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to disqualify counsel for Defendant-in-Intervention is **DENIED as moot**; and it is further

**ORDERED** that all pending filings of Defendant-in-Intervention are stricken from the docket; and it is further

**ORDERED** that the Defendant Government of the Virgin Islands shall file a renewed motion for summary judgment that is fully supported by the necessary affidavits and evidence within 20 days of entry of this order; and it is further

**ORDERED** that a copy of this Order shall be directed to counsel of record.

**DATED:** January 9, 2026

**HONORABLE SIGRID M. TEJO**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

**BY:**

**DONNA D. DONOVAN**
Court Clerk Supervisor  01  / 12  / 2026